Merrimack,
Dec. 3, 1929.

CORA F. LEE *v.* FRED H. CHAMBERLIN, *& a.*

GEORGE LEE *v.* SAME.

*Robert W. Upton* (by brief and orally), for the plaintiffs.

*Demond, Woodworth, Sulloway & Rogers (Mr. Jonathan Piper* orally), for the defendants.

SNOW, J. The defence was that the injured plaintiff was the guest of the defendants, and that the defendant chauffeur was not guilty of gross negligence upon the proof of which alone liability for such injury could arise under the law of Massachusetts. It is conceded that the substantial rights of the parties are governed by that law. *Young* v. *Company,* 76 N. H. 582, 584.

The law there limiting liability for negligent injury to a "guest" in such cases and defining "gross negligence," as found by the court, is as follows:

"A person who is traveling in the vehicle of another at the latter's request and for the latter's benefit is not a mere guest, and in such case the latter is liable for ordinary negligence."

"One who is traveling gratis in a motor car in company with its owner by such owner's invitation, and is injured by reason of the negligence of the chauffeur operating the car, who is acting at the time as the servant of the owner, cannot maintain an action against such owner for his injuries unless he can show gross negligence on the part of the chauffeur."

"Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character, as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts, to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence. But it is something less than the wilful, wanton, and reckless conduct which renders a defendant who has injured another liable to the latter even though guilty of contributory negligence, . . . It falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind

from wilful and intentional conduct which is, or ought to be known to have a tendency to injure."

Cases in evidence cited in the findings of the foregoing include *Massaletti* v. *Fitzroy*, 228 Mass. 487, and *Altman* v. *Aronson*, 231 Mass. 588, 591. It appears to be conceded that the law is the same whether the suit is against the chauffeur or against the owner.

Statutory rules of the road deemed material by the parties are:

"Every driver of a motor or other vehicle approaching an intersecting way, . . . shall grant the right of way, at the point of intersection to vehicles approaching from his right, provided that such vehicles are arriving at the point of intersection at approximately the same instant; except that whenever traffic officers are standing at such intersection they shall have the right to regulate traffic thereat." Mass. G. L., *c.* 89, *s.* 8.

"The person operating a motor vehicle on any way upon approaching an intersecting way or a curve or a corner in said way where his view is obstructed shall slow down and upon approaching any junction of said way with an intersecting way before turning into the same shall slow down and keep to the right of the intersection of the center lines of both ways or extensions thereof, when turning to the right, and shall pass to the right of the intersection of the center lines of said ways or extensions thereof before turning to the left."

"No person operating a motor vehicle on any way shall run it at a rate of speed greater than is reasonable and proper, having regard to traffic and the use of the way and the safety of the public. It shall be prima facie evidence of a rate of speed, greater than is reasonable and proper as aforesaid if a motor vehicle is operated on any way outside of a thickly settled or business district at a rate of speed exceeding twenty miles per hour for the distance of a quarter of a mile, or inside a thickly settled or business district at a rate of speed exceeding fifteen miles per hour for the distance of one eighth of a mile, or any place where the operator's or chauffeur's view of the road traffic is obstructed either upon approaching an intersecting way, or in traversing a crossing or intersection of ways, or in going around a corner or a curve in a way, at a rate of speed exceeding eight miles per hour." Mass. G. L., *c.* 90, *ss.* 14, 17; Acts 1925, *c.* 305.

It is further found that the words "point of intersection," as used in *c.* 89, *s.* 8, mean the space common to the streets where they cross each other.

It appears to be conceded by the defendants that want of ordinary care on the part of the defendant Chamberlin could be found on the evidence. The questions presented by the plaintiffs' exceptions therefore, are whether under the law as stated it can be found on the evidence (1) that the injured plaintiff was not a guest of the defendants, or (2) being a guest, that her injury was occasioned by the gross negligence of said Chamberlin.

1. On the occasion in question the plaintiffs accepted the invitation of the defendant Chamberlin, with the consent of the defendant Pickering, to ride with them from Boston to Concord where they all resided. It is not claimed that any specific consideration or benefit was paid or bestowed for such carriage. For proof of a "benefit" accruing to the defendants, within the terms of the statute, the plaintiffs rely upon evidence of the prior friendly relations and course of conduct of the parties. The plaintiff, Mrs. Lee, is a sister of the defendant Chamberlin, and for many years was herself an employee of Mrs. Pickering. Since her marriage two years before the accident she has continued friendly relations with her former employer, on one occasion doing Mrs. Pickering's housework without pay for eleven days during the latter's illness. For the two years of their married life the plaintiffs had been tenants of Mrs Pickering. On frequent occasions they had taken trips with the defendants in the Pickering car, during which they had "almost always" furnished basket dinners for the party, invited the defendants to their house for meals or took food to the Pickering house. On long trips Mr. Lee occasionally paid for gasoline, and on one or two occasions "spelled" Chamberlin in driving.

This evidence tends to show no more than an interchange of ordinary hospitalities among friends, and would not sustain a finding of the existence of any business arrangement from which it could be implied that the carriage of the° plaintiffs on the trip in question was for any past, present or expectant benefit to the defendants. The ruling of the trial court that the plaintiffs were traveling *gratis* and not for the benefit of either of the defendants within the meaning of the Massachusetts law is sustained. *Flynn* v. *Lewis,* 231 Mass. 550; *Gaboury* v. *Tisdell,* 261 Mass. 147.

2. The collision occurred at the intersection of the Cambridge road running north and south and the Bedford road which crosses it northwesterly and southeasterly at an angle of about seventy-five degrees. The former was twenty-four feet wide, surfaced with concrete eighteen feet; the latter twenty-one feet wide and surfaced for

sixteen feet. The Pickering automobile, a seven passenger two wheel brake Cadillac, was traveling north upon the easterly side of Cambridge road. The accident happened after nine o'clock in the evening of Monday, July 5th, 1926, which was observed as the fourth. The travel was heavy and the car was moving along with the traffic in a "string" or "line of cars" at about twenty-five miles per hour and had been doing so for a half mile or more. A like line of cars had been passing south on the westerly side of the road, but had come to a stop about twenty to twenty-five feet north of the intersection, at which point a policeman with his back to the intersection was apparently talking to the occupants of the head car therein. He made no signal and was paying no attention to the line proceeding north. The lights on the cars in both lines were lighted. The driver of the car directly ahead of the Pickering car and about twenty-five feet away, after signalling with his hand and without slackening his speed, turned "quickly" to the east onto the Bedford road. The Pickering car, continuing its course for about twenty feet, was in collision with a Velie touring car which had reached the intersection by Bedford road from the northwest. The former struck the side of the latter car back of the front seat, throwing Mrs. Lee and another passenger to the pavement. The impact pushed the Velie car "around a little bit" so that it stood diagonally southeast beside the Cadillac which remained headed north. While the latter car suffered substantial injuries it was able to proceed on its own power. The brakes on the Pickering car were in good working order. Neither driver blew his horn.

Mrs. Lee testified that when the Pickering car was about seventy-five or one hundred feet from the intersection she saw the car approaching from the left about seventy-five feet from the intersection; that both cars were about equally distant from the intersection and traveling at a speed of about twenty-five miles per hour; that the Velie car reached the intersection first; that she did not think anything about an accident until she got within twenty feet of the intersection. Mr. Lee testified that the Pickering car was approaching the intersection at a speed of about twenty miles per hour; that he saw the policeman standing by the south bound car when he was seventy-five or a hundred feet from the intersection; that his attention was first drawn to the Velie car by its lights when the Pickering car was about thirty feet and the Velie car about twenty feet distant from the point of collision, at about which time his wife exclaimed "Oh"; that he noticed a slight application of the brakes when around

fifteen feet from the point of collision but that he observed no change in speed; that, at a point on the Cambridge road one hundred and twenty-five feet south of the intersection one can see a like distance west on the Bedford road; that the Pickering car, in his opinion, could be stopped on such a highway within a distance of ten feet when traveling at a speed of fifteen miles per hour, within fifteen feet at twenty miles and within twenty feet at twenty-five miles. Mr. Lee admitted that, before he was advised that Chamberlin did not, by law, have the right of way, he had stated that Chamberlin was in no way to blame for the accident.

The defendant Chamberlin testified that the driver of the car immediately ahead of him had kept putting on his spot light and signaling with his hand for some little distance before reaching the intersection; that he did not know which way the car was going to turn or that there was an intersecting street; that he had decreased his speed and was traveling fifteen miles per hour; that when the car went off to his right he increased his speed to catch up with the line of traffic; that he had arrived at the intersection when he first saw the lights of the Velie car coming through the south bound traffic but that he didn't know whether they were the lights of a car in the south bound traffic or of one coming through; that both cars were then about fifteen to twenty feet from the place of collision and equally distant therefrom; that when he discovered that the Velie car was coming through he set his brakes and turned slightly to the right in an effort to avoid the accident by giving it a chance to pass; that the Velie car was traveling north of the center of the Bedford road and that he went, in all, about twenty-five feet after applying his brakes; that the traffic south was a continuous stream and that he observed no break in it and did not see the policeman; that the lights of the south bound cars were "very strong"; that he was not looking to his left but was watching for traffic on his right and the highway straight ahead; that he heard no outcry.

The question here presented is whether on this evidence, construed in its light most favorable to the plaintiffs, gross negligence as defined in the record can be found.

We find no basis for the plaintiffs' contention that the rule in this jurisdiction is that, "when there is evidence of negligence whether the evidence is sufficient to warrant a finding of gross negligence is a question of fact for the jury." The authorities cited in support of this proposition are *Colston* v. *Railroad*, 78 N. H. 284, 285 and *Boiley* v. *Railroad*, 78 N. H. 564, 566. The first named case was an

action for personal injuries received by the plaintiff while walking on the defendant's track in defiance of a statutory notice forbidding it and limiting her right of recovery to injuries "occasioned by the willful or gross negligence of the railroad or its employees." Laws 1899, c. 75. The case was submitted to a jury with verdict for the defendant. Exceptions were taken to the denial of requests for instructions and to the charge under which, as interpreted by this court, "the only question presented . . . is whether, under certain circumstances, lack of ordinary care as matter of law constitutes wilful or gross negligence." In overruling these exceptions the court said in part: "This does not raise the question whether under the circumstances Crowe [defendant's servant] might not have been found guilty of wilful or gross negligence, a question which was plainly submitted to the jury, but asks for the determination of the question as matter of law. Negligence is a question of fact. This proposition has been adhered to despite strenuous effort to have certain acts, or the failure to act under certain circumstances, declared negligence as matter of law." This language, particularly relied upon, was addressed solely to the point there in issue, namely, whether the court could as a matter of law declare that lack of ordinary care under the particular circumstances disclosed by the record constituted wilful or gross negligence. That the case does not support the plaintiffs' contention appears not only from the context which makes clear that no question of the sufficiency of the evidence to support wilful or gross negligence was presented, but from later passages in the opinion which disclose that the court was not unmindful of the difference in the proof necessary to sustain findings of the want of ordinary care and gross negligence, namely, "The legislature plainly intended to change the law . . . to hold that the defendants are liable for failure to exercise 'ordinary care',—the rule at common law—would abolish the statute." In *Boiley* v. *Railroad, supra,* the requests for instructions were thought capable of the construction that failure to use ordinary care in the face of a known danger would constitute gross negligence, and their denial was sustained on the authority of the *Colston* case. These cases go no further than to hold that the law does not adopt particular circumstances as the measure of care, whatever may be the standard which is being applied. *Byron* v. *Railroad,* 82 N. H. 434, 438.

While in this jurisdiction the doctrine of definitive degrees of negligence is not recognized as a part of our common law, nevertheless, where such doctrine is made the basis of a legislative rule, enforceable here, it cannot be treated as meaningless or denied application. We

see no difference in principle whether the rule is statutory, or one of substantive common law as settled by the courts of the controlling jurisdiction. The rule here in question was plainly meant to relieve the owner of a motor car from the consequence of accidents, as respects guests traveling with him on his invitation, occasioned by the failure of such owner or his servants to use ordinary care. To hold that evidence of want of ordinary care alone would support a finding by a jury of gross negligence would be to nullify the rule.

While the question as to whether one is guilty of gross negligence within the Massachusetts law would ordinarily be one of fact for the jury, this rule "is necessarily subject to the limitation affecting the submission of all questions of fact to the jury: that if on the evidence reasonable men can come to only one conclusion, there is no question for their decision." *McGill* v. *Company*, 70 N. H. 125, 129; *Gahagan* v. *Railroad*, 70 N. H. 441, 445; *Deschenes* v. *Railroad*, 69 N. H. 285, 289; *Gage* v. *Railroad*, 77 N. H. 289, 295. The latter question is for the court to decide as a question of fact although it is called a question of law. *Kendall* v. *Green*, 67 N. H. 557, 561; *Gahagan* v. *Railroad, supra*; *Morier* v. *Hines*, 81 N. H. 48, 54; *Robinson Company* v. *Drew*, 83 N. H. 459, 462. It is true that the law affords no formula by which the line dividing the want of ordinary care and gross negligence can be mathematically determined. But the difficulty of the problem does not excuse the court from the performance of its duty. We do not need to consider the question whether, in close cases where the ascertainment of the divisional line demarking the degrees of care under the particular circumstances depends upon certain doubtful facts to be found, the court may perform such duty by calling the jury to its aid, and, by instructions, limit their further consideration of the case according to their finding of such controlling facts. The instant case affords no such a situation, for, on the evidence construed most favorably for the plaintiffs, it seems clear to us that reasonable men could not reach the conclusion that Chamberlin was guilty of gross negligence as it is defined in the record.

Reliance is placed by the plaintiff upon the alleged violation of several statutory rules of the road. Operating a motor vehicle outside of a thickly settled district at a speed exceeding twenty miles per hour for the distance of a quarter of a mile is made, by Mass. G. L., c. 90, s. 17, *prima facie* evidence of an unreasonable and improper speed forbidden by the statute. The *prima facie* effect given by the statute to evidence of a greater speed loses its force in face of the

undisputed fact that Chamberlin was merely maintaining his position in congested traffic which was proceeding in an unbroken line at the rate of twenty-five miles per hour. This was persuasive evidence bearing upon the reasonableness not only of his speed within the meaning of this section of the statute, but likewise of his conduct in failing to slow down under the requirements of s. 14. Manifestly the only alternative in either respect was to permit all the other cars in the line to pass him. If a failure to adopt such alternative course under the circumstances shown, viewed in their light most favorable to the plaintiffs, might be found to be negligence, it could not be found to be negligence of a magnified character within the definition of gross negligence. Mass. G. L., c. 89, s. 8 "granted" the Pickering car the right of way at the intersection. This right was not lost to the Velie car merely because it had entered the intersection first. *Gendron* v. *Glidden, ante,* 162; *Hall* v. *Root* 109 Conn. 33. While the statute gave Chamberlin no absolute right of way, and did not absolve him from the exercise of care (*Gendron* v. *Glidden, supra*), it could not be accounted gross negligence on his part to act on the assumption that a car approaching on a cross-road from his left would not attempt to pass through a continuous line of traffic on a main thoroughfare without notice and at such a speed and with such want of control as would endanger a collision.

Chamberlin's failure to anticipate the presence of a cross-road, to observe the police officer or the break in the south bound traffic, or to discover the approach of the Velie car in season to avoid the collision must all be considered in the light of the accompanying circumstances. The policeman was not at the intersection where a driver would look for an officer in control of the traffic, and it does not appear that the break in the south bound line was more than momentary. Chamberlin was engaged in maintaining his position, both as to the cars in the line in which he was traveling, and in respect to the opposing line, each in congested traffic on a roadbed surfaced to a width of only eighteen feet. Necessary attention had to be given to the signals of the driver in the car next ahead of him, and to that driver's possible conduct. The effect upon his vision of the lights of the south bound cars in a street of that width, and the chance for confusion of the same with the lights of a car approaching at an angle of seventy-five degrees cannot be regarded as negligible factors in the situation. It seems clear to us that his failure in these particulars, under the distracting and confusing circumstances, cannot be

found to be "omission respecting legal duty of an aggravated character, as distinguished from a mere failure to exercise ordinary care."

Upon discovery that the Velie car was coming through the south bound traffic into his line of travel Chamberlin was confronted by an emergency which gave little opportunity for reflection. Conceding that it might be found, contrary to his testimony, that he failed to make the most efficient use of his brakes such failure manifestly could not, under such circumstances, be found to constitute negligence of a gross character.

The statement of one of the plaintiffs, an eye witness to the accident who was himself accustomed to drive the car, in effect, that he did not attach any blame to Chamberlin for the accident until advised that the latter did not by law have the right of way tends strongly to confirm our conclusion, otherwise drawn from the record, that there was an absence of conduct on the part of Chamberlin of such a degree of culpability as to warrant a finding of gross negligence as defined in the record.

Such being our conclusion under our practice it is unnecessary to consider the question, argued at length by opposing counsel, whether, in passing upon the sufficiency of the evidence to support a finding of gross negligence under foreign law the court is to be governed by the practice, as respects strictness or liberality, of the courts of the foreign jurisdiction or by that of the forum; and the same has not been considered.

*Judgments for the defendants.*

All concurred.