Roellig and wife, Respondents, vs. Gear and another,
Appellants.

*March 5—April 2, 1935.*

For the appellants there was a brief by *Bradford, Bradford & Derber* of Appleton, and oral argument by. *A. S. Bradford.*

For the respondents there was a brief by *Benton, Bosser, Becker & Parnell* of Appleton, and oral argument by *A. W. Parnell.*

FOWLER, J. The appellants claim that, (1) the plaintiff Edward G. Roellig was negligent as matter of law; and that the court erred (2) in its instructions; (3) in rejecting evidence; (4) in refusing to withdraw a juror; and (5) in not granting relief because the award of damages to the plaintiff Margaret Roellig is excessive.

(1) Roellig was driving east and Gear north. The defendants claim that because of this and other undisputed evidentiary facts Roellig did not have the right of way, and knew or should have known, that a collision would occur if he proceeded into the intersection, and was thus guilty of negligence as matter of law.

According to Roellig's testimony it was twilight when the collision occurred. Both cars had headlights burning. A building was under construction near the southwest corner of the intersection. There was a lumber pile east of the building, but Roellig could see over it, and it did not obstruct his vision. As Roellig approached the intersection, he looked to his right and saw a long way down the street. He saw no cars coming. As he passed the building, he looked again and saw Gear's car opposite a building one hundred and twenty feet from the intersection. He did not notice that the car was coming fast. Roellig's front wheels were then on the crosswalk. He had reduced his speed to ten miles per hour for the crossing. He assumed "the Gear car was traveling within the speed limit." The speed limit at the place was fifteen miles per hour, and at that rate it would have taken Gear about six seconds to get into Roellig's line of travel. Roellig increased his speed somewhat. He was forty feet from Gear's line of travel when he first saw Gear, and at ten miles per hour it would take him about three seconds to reach that line. When he reached the center of the street, he saw Gear's car thirty feet away, and noticed it was coming faster than he had thought. He then "stepped on it [the gas] a little harder" thinking he "had plenty of time to get out of his way." When he noticed Gear's car the second time, he had sixteen feet to go to clear Gear's car. Gear struck his right rear wheel with his right front bumper. When the Gear car was thirty feet away Roellig realized there was going to be an accident. He was then going fifteen to twenty miles per hour. He did not swerve or apply brakes to avoid a collision. There were no cars approaching from the north or east to prevent his turning left. He did not apply his horn to warn Gear of his presence. Under this evidence we are of opinion the question of Roellig's negligence was for the jury.

. (2) The appellants claim that the court erred in its instructions, (a) as to the right of way; (b) in refusing to give an instruction as to right of way requested by defendants; and (c) as to conduct in an emergency.

(a) A question of the verdict was, in effect, "Was there a failure by the defendant [Gear] to comply with the law relative to the right of way?" In connection with this question, the court quoted from sec. 85.18 (1), Stats.:

"*Right of way at intersections.* When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in this section. The driver of any vehicle driving at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder." Then followed:

"In connection with the above you are instructed that it is only when two vehicles approach or enter an intersection at approximately the same time that a driver to the left is compelled to yield the right of way to the driver to the right. Consequently, if the driver to the left approaches and enters the intersection first he is entitled to the right of way."

The first sentence of this instruction is correct. But the second is erroneous. It does not follow from the first sentence, or from the statute, that if the driver to the left enters the intersection first, he is entitled to the right of way. This does not follow unless they do not reach the intersection "at approximately the same time." This error was emphasized by saying in immediate connection:

"In this case you will determine from the credible evidence whether or not the automobile of the plaintiff, Edward Roellig, approached and entered said intersection before the automobile of the defendant, Gear. If you find from the evidence that the automobile of the plaintiff Roellig approached and entered said intersection before the automobile of the defendant, Gear, approached or entered it then you will find that under such circumstances the plaintiff Roellig was entitled to the right of way at said intersection."

This error was again repeated in the instruction given in connection with the question put as to Roellig's failure to comply with the law relative to right of way:

"In connection with any questions submitted with reference to the negligence of the plaintiff, Edward Roellig, you are instructed that if the Roellig automobile approached and entered the intersection first, then you will find that he was entitled to the right of way therein."

As under the undisputed evidence Roellig did actually enter the intersection first, this was equivalent to instructing that he had the right of way, in absence of a statement that entering first did not give the right of way unless the two cars did not "approach and enter" at approximately the same time. That it might be inferred from the evidence that the parties did enter the intersection at approximately the same time is shown by the testimony of the only disinterested witness who saw the cars before the collision occurred, who said:

"The thing that attracted my attention to the Roellig car was that I knew they [the Roelligs] were going to get hit if they kept coming. I knew that right away. I mean that when I saw the big car [Gear's] come off the avenue and the little car near the crosswalk if that car [Roellig's] came out the accident would happen."

It is true that Gear's right of way by reason of his being to Roellig's right was forfeited by his excessive speed, but that did not give Roellig the right of way if the two cars were "approaching and entering" at approximately the same time. If this were the situation, neither car had the right of way as matter of law. The situation was as it was in *Wallace v. Papke,* 201 Wis. 285, 288, 229 N. W. 58.

(b) The appellants further claim that the court erred in refusing to give their requested instruction taken from *Wallace v. Papke, supra:*

"It may be stated further that the general rule that the first entering the intersection has the right of way has some

limitations. It does not justify one first reaching an intersection in going ahead when it is reasonably apparent that a collision will result from so doing. When each driver approaches an intersection with his car in control as it should be and as it will be if he obeys the statutory provisions, the one who by clear margin enters the intersection first may under the rule requested rightly proceed, as he may then reasonably anticipate that the other will allow him to pass ahead. But if the other vehicle is so close or coming at such dangerous speed that a collision is apparently likely to occur if he proceeds, he must then yield or so keep control of his car as to be able to avoid interference."

The statute as to right of way at intersections as to vehicles crossing intersecting streets in force when the instruction quoted was given was the same as now. The first part of the requested instruction was sufficiently covered by other instructions given by the court, but not the portion commencing, "When each driver approaches," etc. There was no limitation whatever given respecting the one first entering the intersection. It was error to refuse the part of the requested instruction not covered by other portions of the charge.

(c) The court gave a proper instruction relative to conduct in an emergency, but applied it to Roellig only. It is claimed that it was error not to give Gear the benefit of such an instruction also. However, it is undisputed that as Gear approached the intersection he was exceeding the speed limit. He was thus negligent in this respect, and his such negligence created or contributed to create the emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in creating the emergency. The court's instruction as applied to Roellig was properly prefaced to cover the condition that he must have been free from negligence in order to be entitled to the benefit of the rule. We discover no error in the instruction complained of.

(3) Appellants' counsel on cross-examination asked the plaintiff husband some questions relative to his wife's in-

come. Some of these questions were answered. Counsel then inquired as to answers to certain questions respecting her income he had made on a previous trial of the case. This was objected to as improper cross-examination, and objection on that ground was sustained. The ruling was not improper. The matter had not been gone into upon direct examination. Had the first question on the subject been objected to, the objection would have been sustained. Being improper cross-examination, the court might rightly stop it when he did.

(4) One of the jurors upon the case was plaintiff in a case against the county for injuries sustained from a defect in the highway pending in the same court and triable at the same term as the instant case. The juror had said in answer to questions of defendants' counsel on the *voir dire* that he had had an accident, but it was "a minor matter" and "was not yet in litigation." On counsel's learning during the trial that the juror's case was pending, he asked the court to withdraw the juror and declare a mistrial, and offered in the alternative to continue the trial with eleven jurors. The court suggested that plaintiffs' counsel ought to stipulate to the withdrawal and continuance of the trial, but they refused to do so. The court then denied the motion. Sec. 270.16, Stats., provides:

"Every person summoned as a juror for any term shall be paid and discharged whenever it appears that he is a party to any action triable by jury at such term."

We are of opinion that this section does not apply to the instant case, because of the manner in which juries are selected under the statute that governs the selection of juries in the municipal court of Outagamie county. By the practice under the act creating that court as amended there is only one "term" of court a year. The court is in session continuously during the whole year whenever there is business to be transacted. There is no panel of jurors in attendance for the "term" or during the term or during any part of the term, except while the particular case is on trial for which the jurors

are called for service. There are two jury lists from which jurors are selected, a county-at-large list and an Appleton list. Either party may have a jury from the county-at-large list by asking for it. If neither party asks for such a jury, the jury is selected from the Appleton list. The county-at-large list contains about two hundred and fifty names and the Appleton list about one hundred and fifty. Whichever list the jury is drawn from, only eighteen jurors are summoned for the trial. Thus only eighteen jurors are ever present in court at once, and their association together is limited to the short time between their arrival pursuant to their call and the selection of the jury of twelve to try the case. The statute relied on by the appellant was enacted by ch. 153, Laws of 1913. It was drafted with the circuit court system in mind of a jury panel of thirty-six jurors for attendance during an entire jury term, which may last for several weeks, or even months, although jurors may not be compelled to serve more than three weeks in succession. This affords an association of jurors together which enables each of them to form acquaintances and friendships with the others on the panel likely to operate greatly to his advantage in his own case if he has one for trial during the term. The reason for the rule for discharge of a juror who has a case for trial during a "term" does not apply to a juror called to sit in a single case. Such a juror is not a juror for the term. His association with the other jurors is limited to the single case. None of the other jurors will sit upon his case unless from a list of one hundred and fifty or two hundred and fifty the lot falls on him by chance. The rule should fall with the falling of the reason for it. If one having a case pending and for trial at a current circuit court term were summoned as a talesman, he would not under the statute cited, as matter of law, be incompetent to serve as a juror in the case in which he was called. No more, and with less reason, is the juror in the instant case disqualified. For the jury in his case will be selected from the one hundred and

fifty or the two hundred and fifty men on the lists while the jury in the other's case would be selected from thirty-six, and the likelihood of having jurors on his case with whom he associated is proportionately lessened. While the court in the instant case might well have excused the juror and declared a mistrial unless the plaintiffs would consent to a trial to the eleven remaining jurors, as the defendants' counsel proposed, we cannot say that his refusal to do so constituted error or abuse of discretion.

(5) While the assessment of $2,000 as the damages of the plaintiff, Margaret Roellig, for pain and suffering was liberal, we cannot say it exceeds what a jury might properly award. Her injuries would be considered temporary and comparatively slight, but for a previous back injury as a result of which pieces of bone had been grafted into vertebræ which were first split to receive them. There had been a recovery from this operation. The present injury brought on recurrence of the pain that resulted from the previous injury. After such an operation, although successful, such pains are likely to recur and to continue. They may continue as long as the patient lives. They might have recurred to plaintiff some time without the present injury, but they might not. But the jury were certainly justified in finding that the recurrence to which she had been subjected up to the time of the trial was caused by the collision in suit. They were also justified in inferring from the evidence that the pain might continue indefinitely. It is also claimed that $700 was too much to assess for Margaret Roellig's loss of earnings. She was a professional nurse and was on a case at the time of her injury. She had not worked or been able to work since the injury. While nurses are much out of employment during the present depression, she had earned $1,000 in 1930, $700 in 1931, and $235 in 1932 up to the time of the injury. Her wage when working was $7 per day. This accident occurred in August, 1932, and the trial was in May, 1934. Under this evidence the award was not excessive.

There is adequate support for the verdict against Gear, and for the finding of no negligence of Mrs. Roellig. As she is not suing her husband, there is no occasion for a new trial of her case. Her judgment may stand. *Scharine v. Huebsch,* 203 Wis. 261, 234 N. W. 358. As to Mr. Roellig, there must be a new trial as to his negligence on the issue of contribution raised by the cross complaint. His answer contains no counterclaim for recovery of his damages, at least it contains no prayer for such recovery, but as judgment was entered for his damages it may be that amendment was made upon the trial. If such amendment was permitted, the question of comparative negligence, if any is found on the part of Roellig, will also be for trial.

*By the Court.*—The judgment of the municipal court in favor of Margaret Roellig is affirmed. The judgment on the cross complaints is reversed, and the cause is remanded for a new trial thereon.