GREENLEAF W. PICKARD, JR., *(by his father and next friend)*

*v.*

FRANK E. MORRIS.

GREENLEAF W. PICKARD, SR. *v.* SAME.

66

*William H. Sleeper* (by brief and orally), for the plaintiff.

*McLane, Davis & Carleton* (*George F. Nelson* orally), for the defendant.

PAGE, J. The scene of the collision is an intersection of Routes 101 and 108. Route 108 at this point runs approximately west and east between Exeter and Durham, but curves slightly to the north at or near the intersection. Route 101 from Portsmouth enters the intersection upon a sharper curve from the south. Between Exeter and the intersection the two routes follow a common course. To a driver approaching from Exeter, the intersection is not visible until he reaches a crest about 150 feet distant. At this crest such a driver has a view of the road from Portsmouth for only 150 feet beyond the intersection.

The defendant was driving from the direction of Portsmouth towards Exeter, with the intention of using Route 101 all of the way. Greenleaf W. Pickard, Jr. (hereafter called the plaintiff) was going from Exeter to Durham, intending to use Route 108 all of the way. Each was using his right-hand lane, but the lanes crossed at the intersection.

The plaintiff's testimony was at some points self-contradictory, but taken as favorably to him as may be, its material features will be stated. As he came to the crest, his speed was towards forty miles an hour. He was familiar with the intersection, and at the crest he took his foot from the accelerator and reduced his speed to about thirty miles, which he maintained until a few moments before the collision. From the crest he noted the approach of the defendant's truck. Each vehicle was then about 150 feet from the point of collision, and he estimated the speed of the truck at the moment as thirty miles an hour, the same as that of his own car.

The plaintiff knew the law of the road at intersections (P. L., *c.* 90, *s.* 3). That law provides that when "a person traveling on a highway with a vehicle approaches an intersecting way . . . he shall grant the right of way, at the point of intersection, to vehicles approaching

from his right; provided, that such vehicles are arriving at the point of intersection at approximately the same instant." This does not mean that the one in the less favored position may, by entering the intersection first, free himself from liability under the statute. "The statute imposes upon such a driver the duty of determining as a man of ordinary prudence whether, under all the circumstances, his arrival at the intersection will sufficiently precede that of the car crossing his line of travel to warrant the reasonable belief that he can safely cross the intersecting street ahead of it. This involves an appraisal of the various factors which make for such danger." *Gendron* v. *Glidden*, 84 N. H. 162, 166. "In short, the invocation of the statute raises an issue of fact in the first instance, namely, whether or not a man of reasonable prudence in the position of the person approaching from the less favored direction would reasonably have concluded that he could pass the intersection without danger of collision. If the finding on this issue is in the negative the rule applies, otherwise not." *Ib.* 168.

It follows from the foregoing that a traveler approaching a road intersecting from the right is bound to take a reasonably good look and to form a reasonably correct judgment as to the dangers involved in the situation. If he sees all that would be seen by a man of average prudence in his position and forms a reasonably prudent judgment that his entrance into the intersection will not incur danger of collision, he may enter. So a driver who stops before entering, looks for a reasonable distance to his right (in which distance no car is coming) may be found entitled to enter without holding back for others. *Fitzpatrick* v. *Parsons*, 90 N. H. 458; *Baker* v. *Salvation Army, ante* 1.

When the plaintiff first saw the intersection and its surroundings, he took a reasonably good look at traffic approaching from the right. But his judgment of the situation disclosed could not be found to have been reasonable. His observation showed him that his car and the defendant's truck were equidistant from the intersection and going at the same speed. The only reasonable conclusion was that, if he continued at the same speed, there would be a collision. As the situation then appeared, he would have to yield the right of way by slowing down, even if he did not stop. Yet he went on at unabated speed until he was actually in the intersection. So far as the discussion has gone, it conclusively appears from his own testimony that his failure to obey the statute was at least partly the cause of the collision.

He claimed, however, that the situation changed as he proceeded so as to warrant the reasonable belief that he could pass through the intersection without danger of collision. The claim requires consideration in some detail of the various forms the situation might be found to have taken.

First we take the situation testified to by the defendant, who said that he actually stopped before entering the intersection, in order to give the right of way to a third car approaching from his right on Route 108. Assuming this to have been the true situation, the plaintiff could not be found to have complied with the first requirement to establish his own right to cross the intersection ahead of the defendant, for it would conclusively appear that the plaintiff did not reasonably survey the changing situation. The plaintiff testified positively that he did not see the defendant stop. He was also positive in the statement that he could not remember seeing any third car approaching the intersection by way of Route 108 from the east. His claim that if such a car had in fact been approaching, he would have seen it and taken it into his calculations, will not serve him. If in fact he saw the third car, it must be found either (1) that he did see the defendant stop, in which case his observation of the situation led him to unreasonable judgment, or (2) that, not seeing that the defendant had stopped, he did not take a reasonably good look and lacked suitable basis for a reasonable judgment. In neither case would his duty to yield the right of way be altered by shifting events. He is in no position to say that he was invited by the defendant's stopping to take the right of way, for he did not see the defendant stop.

Second, we take the only other evidence of change in the situation, that testified to by the plaintiff himself. According to him, he observed at some time that the defendant was slowing down. His claim is that he was consequently justified in concluding that the defendant intended to permit him to pass in front and that such passage would be free from danger. Here the plaintiff is met by several difficulties. It nowhere appears at what point the plaintiff formed this opinion. He might have formed it a sufficient distance from the point of collision so that defendant's act in proceeding could be regarded as the sole proximate cause of the collision, to which the plaintiff's continuance at unabated speed did not contribute. Or it might have been formed too late for his own speed of approach to cease to be causal. As between the two possibilities, the jury could not be permitted to guess.

There is a further difficulty faced by the plaintiff. The reduction of speed by the defendant might have been due to any one of several causes, as (1) an intention on the part of the more favored driver to yield his statutory rights to the plaintiff, a courtesy neither due nor ordinarily to be expected, an intention of which there was no evidence other than the mere reduction of speed, (2) a desire to yield the right of way to a third car, (3) a desire to slow down for the intersection as required by P. L., c. 103, s. 10, (4) simple caution on the defendant's part unaccompanied by intention to yield to the plaintiff, or (5) perhaps some other unknown reason. The plaintiff could reject the last four chances and adopt the unusual first theory only if he formed a reasonably correct judgment after reasonably prudent observation of every factor in the situation. Assuming as the only existent factor what the plaintiff says he relied on—the mere slowing down of the other car—his conclusion that the defendant had the intention of yielding was based on guess rather than on reason. This is not to say that his judgment might not have been justified if he had observed some other factor that reasonably indicated such an intention.

The plaintiff testified distinctly that his speed of thirty miles an hour was continued until he was actually in the intersection, approximately in the defendant's lane and only fifty feet from the point of collision; that he then observed the defendant to swing unexpectedly to the right; that he (the plaintiff) thereupon applied his brakes for the first time. If an emergency was presented to him, he can take no advantage of that, because his fault helped to create it. After his first observation, it was his duty to reduce his speed. His continuance at the same speed was not justified by any later change in the situation. His speed therefore remained causal to the end.

Under P. L., c. 103, s. 10, a driver is required to reduce speed before entering an intersection. While no special speed is prescribed, it must be reasonable with respect to all of the circumstances, one of which is the right of way situation. The same statute requires a signal to be given when approaching an intersection, as warning to one approaching on the intersecting way. *Dow* v. *Latham*, 80 N. H. 492, 499. It could not be found that the plaintiff obeyed any one of the applicable statutes. While the causative effect of the want of signal would have been for the jury (*Powers* v. *Barrett*, 90 N. H. 279) the plaintiff's faults as to speed and the assumption of the right of way were clearly causal in part, whatever the defendant's fault. As to his claim for personal injuries, there should have been a nonsuit.

There was evidence that the defendant was inattentive and his negligence seems to be conceded. The question is raised whether the claims of Greenleaf, Sr. for medical expenses in the treatment of his son's injuries and for damages to his car are barred by the causative fault of his son. No question was raised, either at the trial or after, as to the possibility that recovery might be had for damages to the car but not for the medical expenses. It is therefore not considered here. *Leavitt* v. *Bacon*, 89 N. H. 383, 389. The defendant relies, however, on the "family purpose" doctrine as the basis for imputing to the father the fault of the son.

The son had the entire use and control of a roadster owned by his father, a car treated substantially as if it belonged to the boy. But on this occasion he was using a sedan owned by his father. He had general authority to use it only for the purpose of transporting himself and his younger brothers and sisters to and from school. For any other use he had to have special permission from his father, or in the latter's absence from his mother. On this occasion the car was being used on a trip to Durham for the purpose of bringing home his older sister, a student at the University of New Hampshire. At the time, the father was in Washington, D. C., and there is no evidence that the son had his mother's special permission for its use on this occasion.

The "family purpose" doctrine has been disapproved here. *La-Fond* v. *Richardson*, 84 N. H. 288. It has been stated thus, however: "when the head of a family supplies an automobile as a pleasure car for the use of his family, it can be found that he has made it his business to furnish entertainment for the members of the family, in which event he is liable for the negligence of any member who is permitted to use the car . . . on the ground that the latter is using it in the owner's business as his agent." *Moulton* v. *Langley*, 81 N. H. 138, 142. Even if this doctrine were enlarged to include family errands, and even if it were "consistent with the principles of agency as interpreted in this jurisdiction" (*Ib.*), it does not conclusively appear that the son, at the time of the collision, was exercising such permissive use of the car as would be required by the doctrine. The motions for a nonsuit and for a directed verdict were properly denied as to the father's individual claim.

There seems to have been but a single action involved, and there would be technical difficulty in entering two judgments. There should have been two separate actions. Though the procedure was irregular, no objection appears to have been made on that score,

and both court and counsel seem to have proceeded as though the father had brought one suit individually and another as next friend. Substantial justice will be done if the claims be disposed of upon that theory.

*Judgment for the plaintiff in his individual action: judgment for the defendant on the action of the next friend.*

All concurred.