ALVA B. MOORE AND OTHERS v. PAUL F. KUJATH.[1]

November 28, 1947.

No. 34,460.

[1]Reported in 29 N. W. (2d) 883.

*Baudler & Baudler,* for appellants.
*Plunkett & Plunkett,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order denying the joint motion of plaintiffs for a new trial in an action arising out of a motor vehicle collision which occurred October 19, 1945, at about 5 p. m., at the inter-

section of trunk highways Nos. 30 and 56 in Dodge county, when a pickup truck operated by defendant collided with a sedan operated by plaintiff Alva B. Moore. Actions against defendant were instituted by the driver of the sedan, his three passengers, and the husband of one of the passengers. Defendant counterclaimed, as to Alva B. Moore only, for damage to his truck and for medical expenses incurred for injuries suffered by his four children, who were riding with him. There were identical verdicts in all five cases finding defendant not guilty of negligence and assessing his damages at $350, despite the fact that the only counterclaim interposed was in the case of Alva B. Moore. Plaintiffs combined in moving for a new trial and together appealed from the order denying their motion.

The principal question for consideration is whether the jury was justified in reaching the conclusion that the negligence of Alva B. Moore was the sole and proximate cause of the collision. Therefore, the question presented is whether as a matter of law defendant was guilty of negligence which contributed to his loss. In reviewing the record, we are obliged to give the verdicts the benefit of every reasonable inference in their support. Merritt v. Stuve, 215 Minn. 44, 57, 9 N. W. (2d) 329, 335; Bloomquist v. Thomas, 215 Minn. 35, 39, 9 N. W. (2d) 337, 340.

For the most part, the evidence is without conflict. All the witnesses agreed that trunk highway No. 30, running east and west, and trunk highway No. 56, running north and south, form an unobstructed intersection, and that on the day of the accident the weather was clear, the roads dry, and the sun shining in the southwest. Both roads were tarvia surfaced, except highway No. 30 west of the intersection, which was graveled for some distance. North of the intersection on highway No. 56 is a hill or knoll, the crest of which is about 800 feet from the intersection. There were no stop signs at the intersection against either highway on the day of the accident. Defendant testified that he was driving west on highway No. 30. When he was about 600 or 700 feet from the intersection, he looked to his right and saw a car (later identified as one owned

by George Haseltine) approaching on highway No. 56 from the north. He stated that upon seeing this vehicle he took his foot off the accelerator and reduced his speed to between 10 and 15 miles an hour so as to permit the Haseltine car to pass in front of him. Defendant testified that after this car had passed he was about 60 feet from the traveled part of the intersection and that he then again looked to his right "at the hill," but did not see the Moore car although it was then about 100 feet behind the Haseltine car and therefore in plain sight. He stepped on the accelerator, increasing his speed to between 25 and 30 miles an hour as he entered the traveled part of the intersection. He said, "I was across the intersection quite a little. * * * In the corner," when the right front fender and wheel of defendant's truck collided with the front end of the Moore car. Defendant said that he did not see the Moore car until the instant of impact.

"Q. Now, you have told us, Mr. Kujath, that you gave a good look, but as you told us, you didn't see the Moore car in any of that distance from the top of the hill down to the point where the cars came together in the intersection, until just the instant they came together; is that true?

"A. Yes, sir."

Defendant's truck came to a stop facing south about 100 feet south of the Moore car, which had stopped near the point of impact on the west side of highway No. 56, also facing south. Moore testified that he was going south on highway No. 56 following the Haseltine car, which was about 100 feet ahead of him, when "just over the knoll" he saw defendant's truck approaching the intersection on highway No. 30. Moore noticed the Kujath truck slow down for the Haseltine car and assumed that Kujath would permit both cars to pass. Moore therefore continued to the intersection at the speed he had been traveling, which he asserts was about 35 to 40 miles an hour. Just a moment before the collision, he set his brakes, as was shown by skid marks about 20 to 30 feet long. He hit the truck near the center of the west lane of highway No. 56 before he could stop. The evi-

dence tended to prove that the Moore car struck the Kujath car on the right side near the front fender.

It is evident that the jury concluded that Moore was negligent, but if the verdict as against him on Kujath's counterclaim is to be sustained the evidence must also sustain the conclusion that defendant was not negligent or that his negligence did not contribute to the accident. However, if defendant is to be held negligent as a matter of law, it must be because, under the circumstances surrounding the situation, his failure to see the Moore car when he looked to the right after permitting the Haseltine car to pass was conclusively negligent and that he should have yielded the right of way to Moore.

Defendant contends that he entered the intersection first, although a review of the facts most favorable to him would reasonably justify an inference that if he did so it was by only one or two seconds, as he did not see the Moore car until "the instant they came together." Moore testified that he approached the intersection at about 35 or 40 miles an hour and applied his brakes just before the impact. Haseltine, who crossed the intersection while driving south, when defendant slowed down for him, said that he was driving about 35 or 40 miles an hour as he approached the intersection and that he noticed through his mirror that Moore was traveling a "few car lengths behind" him. Moore estimated the distance at about 100 feet, and, according to his statement to the witness Buckingham, he was following the Haseltine car "pretty close and we were driving quite fast." Moore, on the other hand, having seen defendant slow down to permit the Haseltine car to pass, might well have assumed that under the circumstances defendant intended to wait until he passed through the intersection behind Haseltine.

■ M. S. A. 169.20, subd. 1, relates to the right of way upon approaching an intersection. The first sentence provides:

"The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway."

This sentence must be interpreted in the light of all the other provisions of the statute, and particularly in the light of the following sentence, which provides:

"When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right."

Obviously, both of the foregoing sentences were placed in the statute by the legislature in an endeavor to promote safety on the highways, and they should be so interpreted. As we view the two sentences, the second one so modifies the first as to require the driver on the left, even though he may reach the intersection first, to yield the right of way to the driver on the right in a situation where the two vehicles would collide were each to continue its course and maintain its rate of speed. To otherwise interpret the law and to arbitrarily give to him who first enters the intersection the right of way over another vehicle approaching at approximately the same time from the right would be to increase rather than diminish the hazards of driving. By *approximately,* the legislature must have meant the approach to an intersection of two vehicles so nearly at the same time that there would be imminent hazard of a collision if both continued the same course at the same speed. In that case, he on the left should yield to him on the right. While the driver on the left is not required to come to a dead stop, as at a through highway stop sign, unless it is necessary to avoid a collision, he nevertheless must approach the intersection with his car so under control that he can yield the right of way to a vehicle within the danger zone on the right. Such must have been the legislative intent. Other states having the same statutory provisions have supported this interpretation. Perhaps the case most directly in support of our interpretation is Zettle v. Lutovsky, 72 N. D. 331, 335, 7 N. W. (2d) 180, 182, where the court said:

"* * * They cite subdivision (a) of § 18 of chapter 162, Laws of 1927, which is as follows: 'When two vehicles approach or enter an intersection at *approximately* the same time, the driver of the

vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in § 19. * * *.'

"Upon the record before us this statute is applicable in the case. *Some contention is made by the defendant that it does not apply because he says that he entered the intersection first.* It may be that he did, but certainly he did not enter it *sufficiently in advance of plaintiffs' car so that it may not be said that both the vehicles entered the intersection at approximately the same time."* (Italics supplied.)

In Smith v. Aspaas, 70 S. D. —, 21 N. W. (2d) 878, 879, the court said:

"* * * The jury may well have understood the court to mean that even though the parties may have approached the intersection at approximately the same time, the defendant would not be liable in the action if he entered the intersection first. So understood, the instruction is erroneous.

\* \* \* \* \*

"If the whole vehicle on the right is traveling at a lawful speed, the test of the duty of the driver on the left to yield the right of way to the vehicle on the right, under this statute, is whether both vehicles are approaching or entering the intersection at approximately the same time. *Which car actually entered the intersection first is without legal significance in determining the right of way, if it appears that the vehicles approached or entered the intersection at approximately the same time.* Zettle v. Lutovsky, 72 N. D. 331, 7 N. W. 2d 180; Hall v. Root, 109 Conn. 33, 145 A. 36; Ingeneri v. Makris, 131 Conn. 77, 37 A. 2d 865; Roellig v. Gear, 217 Wis. 651, 260 N. W. 232; Lee v. Chamberlin, 84 N. H. 182, 148 A. 466; Pickard v. Morris, 91 N. H. 65, 13 A. 2d 609; White Dairy Co. v. Sims, 230 Ala. 561, 161 So. 812; and Fournier v. Zinn, 257 Mass. 575, 154 N. E. 268."' (Italics supplied.)

In Walkup v. Bardsley (8 Cir.) 111 F. (2d) 789, 792, the circuit court of appeals, speaking through Judge John B. Sanborn, said:

"It has long been the rule in Minnesota that the driver of a motor vehicle, in crossing a highway intersection, is required to yield the right of way to a vehicle approaching from his right and so close that there is danger of collision if both proceed; and that the right of way statute does not warrant automobile drivers in taking close chances. Gibbs v. Almstrom, 145 Minn. 35, 176 N. W. 173, 11 A. L. R. 227; Pearson v. Norell, 198 Minn. 303, 269 N. W. 643. We find no case in which the Supreme Court of Minnesota has held that, where two motor vehicles are approaching an intersection from different highways at the same rate of speed and are approximately equidistant from the intersection and a collision is inevitable if both proceed, the driver of the vehicle on the right is required to yield the right of way to the vehicle on the left provided that vehicle reaches the intersection a fraction of a second ahead of the vehicle on the right. Such a construction of subdivision (a) would be opposed to common sense and would go a long way toward converting what was intended to be a rule to prevent accidents into a rule which might well increase the hazards of the road by encouraging drivers to take close and unjustified chances. It is our view that subdivision (a) was not intended to conflict with subdivision (b), but was enacted to enable the driver of an automobile which has reached an intersection an appreciable length of time ahead of cars approaching from his right, to cross the intersection without having to wait until such cars have passed through. It places the duty upon the driver of a car approaching from the right to yield the right of way to the driver of a car on the left, where that car is actually in possession of the intersection. See and compare, Montague v. Loose-Wiles Biscuit Co., 194 Minn. 546, 261 N. W. 188; Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744; Nye v. Bach, 196 Minn. 330, 265 N. W. 300. We do not regard subdivision (a) as applicable to the situation here involved, where the rate of speed of the Walkup car and the distance it traveled into the intersection before it was struck indicated that it had reached the intersection a split second ahead of the Bardsley car."[2]

---

[2]The reference to subdivision (a) is to the first sentence of the statute quoted in this opinion, and that to subdivision (b) is to the second sentence.

■ On the question whether defendant should have yielded the right of way to Moore if he saw him coming, we must hold that he should have done so as a matter of law unless he was excused because of his testimony that, although the Moore car was in plain sight, he did not see it until the moment of impact.

Plaintiffs cite Hermanson v. Switzer, 188 Minn. 455, 247 N. W. 581, as controlling in their favor, while defendant claims that this court has repeatedly repudiated the doctrine of the Hermanson case, of DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350, of Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145, and of similar cases which hold in effect that one who looks and does not see that which is in plain sight and which he ought to have seen is guilty of negligence as a matter of law. Defendant cites Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327, and Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231, as authority for the so-called *repudiation.* What this court really did in the Ranum and Abraham cases was to overrule the doctrine of the Hermanson, DeHaan, and similar cases to the extent that the mere failure on the part of one who looks and does not see that which is in plain sight and which he might have seen does not in itself make him guilty of contributory negligence as a matter of law *without regard to surrounding circumstances.* Summarized in the Ranum case, the court said (220 Minn. 174, 19 N. W. [2d] 330):

"* * * We expressly reject the policy of applying arbitrary standards of behavior amounting in effect to rules of law to all cases without regard to surrounding circumstances."

What were the surrounding circumstances required to be taken into consideration by this court in the cases at bar which would determine whether verdicts of no negligence on the part of defendant were justified? We have considered the speed of the cars involved, the weather, the lack of highway obstructions and of distractions, the contour of the surrounding land, and the condition of the highways. Moore claims that he was going 35 to 40 miles an hour just before the collision. Defendant says that he reduced

his speed to 10 or 15 miles an hour so as to let the Haseltine car pass in front of him, and that he then increased his speed to about 25 to 30 miles an hour as he entered the traveled part of the intersection. There were no obstructions such as cornfields, trees, or brush on any of the roads near the intersection. The weather was bright and clear, with the sun setting in the southwest at that time of year. Defendant claims that the sun did not obstruct his view. The contour of the land at the intersection was reasonably level, except as it led up to the knoll or hill about 800 feet to the north. Both of the highways from the north and from the east were tarvia surfaced, and there was no evidence of dust created as either of the cars approached the intersection. Defendant admits that when he was about 600 or 700 feet from the intersection he looked to his right and saw a car later identified as the Haseltine car and that he reduced his speed to let it pass. He also testified that after the Haseltine car had passed and when he was about 60 feet from the traveled part of the intersection he looked again to his right and saw nothing. The Moore car was then in plain sight approximately 100 feet away, and, with no intervening obstacles and no distracting circumstances, it should and would have been seen by defendant if he had in fact looked.

Taking into consideration all the surrounding circumstances and the facts of the case, as presented by the record, we believe that defendant was guilty of negligence as a matter of law and that such negligence was connected as cause with the collision. Plaintiffs' motion for a new trial should have been granted.

Order reversed.

PETERSON, JUSTICE (concurring).

I concur in the result.