## JOE B. BORAAS AND OTHERS v. RUTH CARLSON AND OTHERS.

127 N. W. (2d) 439.

March 20, 1964—No. 38,915.

479

*Johnson, Milloy & Eckert, Jenson, Irvine & Ramstad,* and *Dygert & Gunn,* for appellants.

*Robert G. Johnson Law Firm* and *Swenson & Nelson,* for respondents Carlson.

THOMAS GALLAGHER, JUSTICE.
Actions for damages by Joe B. Boraas individually; as trustee for the

heirs of Jerome Allen Boraas, deceased; and as natural guardian of Curtis L. Boraas, a minor, against defendants Ruth Carlson and S. H. Carlson, her father; and against Elaine Terpstra and Ray Terpstra, her husband. The actions arose out of a two-car, head-on collision which occurred November 27, 1960, at about 5 p. m. on State Highway No. 40 in Lac qui Parle County about 4 miles east of Madison, Minnesota.

As a result of the accident Jerome Allen Boraas, age 15, met death, and Curtis L. Boraas, age 11, sustained injuries. One of the cars involved was owned by S. H. Carlson and driven by his daughter, Ruth Carlson. The other car was owned by Ray Terpstra and driven by his wife, Elaine Terpstra. Jerome and Curtis Boraas were passengers in the Terpstra car at the time.

The cases were consolidated for the trial. The jury returned a verdict in favor of the Carlsons, but found against the Terpstras. Subsequently plaintiffs' motion for judgment notwithstanding the verdict or for a new trial was denied as to the Carlsons, but granted as to the Terpstras on the issue of damages only.[1] This is an appeal from a judgment entered in favor of the Carlsons.

On appeal plaintiffs contend that (1) the evidence established as a matter of law that Ruth Carlson was negligent in the operation of her vehicle at the time of the accident; (2) the court erred in failing to give certain instructions requested by plaintiffs; and (3) the court erred in the reception of certain evidence as hereinafter described.

The facts are as follows: At the time of the accident the Carlson car, driven by Ruth Carlson, was traveling easterly on State Highway No. 40 approximately 4 miles east of Madison. The Terpstra automobile, driven by Elaine Terpstra, was traveling westerly on the same highway. The two cars met head on in the south lane of the highway, the tarvia surface of which was in an extremely slippery and icy condition at the time. It is undisputed that the Terpstra car was entirely

---

[1]Upon a retrial on the issue of damages in the Terpstra case, the jury returned a verdict finding that no damages had been sustained. This was subsequently set aside and a new trial ordered on the same issue. This trial has not as yet been held.

to the left or south of the centerline and had been traveling on this portion of the highway for some time prior to the accident. On either side of the highway are gravel shoulders, each approximately 8 feet in width. The tarvia or blacktop surface of the highway is approximately 24 feet in width. There are no curves or elevations for some distance either way from the point of impact. There was testimony that at the time of the accident the atmosphere was "somewhat darkened" but that it was still daylight. It is undisputed that the lights of both cars were on at the time of the accident and had been on for some time. A number of witnesses who had been driving on the same highway in the vicinity at the time testified that they had found it safer to drive with their right wheels on the shoulder to the right of the tarvia portion of the highway.

There was no dispute as to the testimony of Ruth Carlson that the highway was "a sheet of ice"; that at all times as the car approached her its lights indicated that it was on the north half of the highway and that it was not until it was about 50 feet away it suddenly appeared on the south half of the highway coming directly toward her; that no significant time elapsed between the time she discovered it on her side of the road and the time of the collision; that upon so observing it she had tried to turn to the right but hardly had time to do so before the crash occurred.

Curtis L. Boraas, a passenger in the Terpstra car, testified that he could not estimate the speed of the Carlson car as it approached the Terpstra car; that he knew that the Terpstra car was on the south half of the highway and that he observed Elaine Terpstra endeavoring to turn her wheel to get out of the south lane; but that because of the conditions of the road the car continued to go "straight down the south lane."

Elaine Terpstra testified that she was the driver of the Terpstra car at the time of the accident; that shortly before the accident it was dark enough that she had the lights of the car on; that the weather was wet and it was "going towards evening"; that the cars traveling at the time had their lights on which could have bothered her; but that she had no recollection of any of the details of the accident.

■ We find no merit in plaintiffs' contention that Ruth Carlson was negligent as a matter of law because of her failure to turn to the right shoulder after she first observed the Terpstra car in her lane; or because of her failure to observe sooner that it was in her lane and to take precautions to avoid it at that time. She had the right to assume that the Terpstra car was traveling in its proper lane and to govern her actions accordingly. By her testimony she clearly established that she had observed the lights of the Terpstra car for a substantial distance before the collision; that because of the weather conditions she could not pinpoint the actual location of oncoming automobiles with respect to the center of the highway; that because of this she assumed that the Terpstra car as it approached her was on its own half of the highway; that the first indication she had that it was not was when it was only 50 feet in front of her and the collision had occurred almost immediately thereafter; that she had tried to turn to the right at that time but apparently had been unable to do so because of the icy condition of the highway. This phase of her testimony was substantiated by the testimony of Curtis L. Boraas who testified that Elaine Terpstra had also tried to turn back to her side of the highway but was unable to do so because of its icy condition. All such evidence clearly negatives plaintiffs' arguments that Ruth Carlson was negligent as a matter of law at the time of the collision and manifests that the issue was for the jury's determination. Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Abraham v. Byman, 214 Minn. 355, 8 N. W. (2d) 231; Olson v. Byam, 176 Minn. 619, 224 N. W. 256.

■ Cases relied upon by plaintiffs, Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; Schubitzke v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 156, 69 N. W. (2d) 104, are distinguishable. In each of these cases we pointed out that the drivers found negligent as a matter of law had no distracting circumstances or intervening obstacles to contend with and that the weather conditions were so favorable as to make inexcusable their failure to observe other vehicles on the highway. Thus, in Faust v. Przybilla, 247 Minn. 420, 424, 77 N. W. (2d) 737, 739, this court stated:

"* * * From the evidence before it the jury could reasonably find that, because of the color of the unlighted truck, the absence of lights, flares, and warning devices, its location just south of the crest of a hill on a pronounced descending slope beyond the circle and area illuminated by the street light in the middle of the block, and its failure to cast a shadow, it was especially difficult to detect, particularly since it had a tendency to blend in with the color of the street; that, even though plaintiff's headlight clearly met the statutory standard, because of the peculiar circumstances, conditions, and lighting facilities existing at the place where the collision occurred, plaintiff was unable to discover the impending danger in time to avoid the accident."

3. Plaintiffs claim the court erred in failing to give certain requested instructions as follows:

"* * * If * * * the factual basis for an assumption * * * that the Terpstra car would return to its own side of the road had disappeared, you should then consider whether * * * it was necessary and practicable for Ruth Carlson to stop her automobile or turn out to avoid a collision * * *.

\* \* \* \* \*

"A car is under proper control * * * if it is moving at such a rate and under such circumstances so as to enable the driver to bring said vehicle to a stop with reasonable promptness and within a reasonable distance in view of all the circumstances. * * *

\* \* \* \* \*

"* * * it is the duty of a person in charge of a vehicle driving on a public street to look ahead and to see all persons, vehicles, or other obstructions in the line of his vision, and * * * he will be conclusively presumed to have seen what he should have seen * * *."

At the time, the court indicated to plaintiffs that such instructions would be given "in substance," and those actually given by the court included the following:

"* * * Due care varies with the circumstances of each case. It must be proportionate to the danger known or reasonably to be apprehended danger. The greater the known danger or reasonably apprehended danger, the greater the care required, but the standard of care is

always the same. It is that degree of care which a person of ordinary prudence would exercise under similar circumstances. Every person has a right to assume that every other person will exercise reasonable care and will obey the law until the contrary reasonably appears. If you find there was negligence on the part of the driver of the Terpstra vehicle such negligence may not be charged in this case to the passengers to defeat the passenger's right to recover.

"* * * The duty of reasonable care may include * * * [t]he duty of every person using a public highway as a driver of a vehicle to use his sense of sight. It is not only the duty of each one to look, but to see what is plainly to be seen. It is also his duty to keep his vehicle under reasonable control.

　　　　*　　*　　*　　*　　*

"It is provided by the statutes * * * that no person shall operate any vehicle upon a highway carelessly or heedlessly in disregard of the rights or safety of others, or in a manner so as to endanger or be likely to endanger any person or property.

"* * * no person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent under the conditions, and having regard to the actual and potential hazards then existing. * * * speed shall be so restricted as may be necessary to avoid colliding with any * * * vehicle * * *.

"* * * the driver of any vehicle shall drive at an appropriate reduced speed when special hazards exist with respect to other traffic, or by reason of weather or highway conditions.

"* * * a vehicle shall be driven upon the right half of the roadway and that drivers proceeding in opposite directions shall pass each other to the right * * *."

At the close of the instructions, the court asked counsel if they had any suggestions or if there had been "any omissions or inadvertent statements." Plaintiffs' counsel made no complaint that his requested instructions as above described had been omitted. We do not find error in the procedure outlined. The instructions given, when considered as a whole, adequately covered all theories of the case upon which any substantial evidence had been submitted. Nubbe v. Hardy

Continental Hotel System, 225 Minn. 496, 31 N. W. (2d) 332; Barnes v. Northwest Airlines, Inc. 233 Minn. 410, 47 N. W. (2d) 180. When no further requests were made as to the omitted instructions in response to its inquiry, the court no doubt assumed that the instructions given were inclusive of those requested by plaintiffs. Rule 51 of Rules of Civil Procedure; Caballero v. Litchfield Wood-Working Co. Inc. 246 Minn. 124, 74 N. W. (2d) 404; Krafft v. Hirt, 260 Minn. 296, 110 N. W. (2d) 14; Nadeau v. Melin, 260 Minn. 369, 110 N. W. (2d) 29.

Further, since there was no evidence that Ruth Carlson had time to either turn or stop her automobile to avoid the collision or to realize that the Terpstra car was not going to return to its proper lane, the instructions omitted by the court might have had a tendency to over-emphasize a theory of the case unsupported by the evidence. Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007; Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685; see, also, O'Connor v. Chicago, M. St. P. & P. R. Co. 190 Minn. 277, 251 N. W. 674; Leman v. Standard Oil Co. 238 Minn. 379, 57 N. W. (2d) 814.

■ Plaintiffs finally contend that the court erred in permitting Elaine Terpstra to testify over plaintiffs' objections as to the relevancy and competency of the following testimony:

"Q. So considering the weather conditions out, and the condition of the atmosphere that day, when you left the Boraas place, you questioned as to whether some of these little children ought to ride along in the car, did you not?

"A. I just said [to plaintiff father of children], 'Why don't the children stay home.'

"Q. And your thought on that was that you felt that the weather was such and the roads might be such that it might be dangerous out there with those kids riding along?

"A. I felt that it was cold, and the wind was strong, and I saw no reason why they should ride along.

"Q. * * * the fact [is] that the weather was such that it was somewhat of a concern to you whether these little children should ride along, isn't that true?

"A.   Yes."

Such testimony related to undisputed facts established by numerous other witnesses and was no more than cumulative in its effect. We find no error in its admission. See, 14 Dunnell, Dig. (3 ed.) § 7184, and cases cited.

Affirmed.