(86 South. 386)

## DREYFUS BROS. v. CORN PRODUCTS CO. (3 Div. 406.)

(Supreme Court of Alabama. Oct. 28, 1920.)

1. **Set-off and counterclaim ⬦35(1)—Defendant cannot apply unliquidated counterclaim against liquidated demand.**

In an action by a corn products company for the purchase price of glucose sold defendants, where it appeared that defendants deducted certain amounts claimed to be due them under a profit-sharing plan, and sent a check to plaintiff for the balance, and the dispute was with respect to such set-off, and not as to the amount of plaintiff's demand against defendants, defendants could not, without plaintiff's consent, apply a counterclaim or crossdemand to the admitted indebtedness due plaintiff, and thereby reduce the amount of plaintiff's demand or create a dispute in respect to the amount due therein.

2. **Accord and satisfaction ⬦11(1)—Check not accepted as tendered in full, but only as payment on account, held inadmissible.**

In an action by corn products company for the purchase price of glucose sold, wherein defendants admitted the indebtedness, but sought to set up a claim, and tendered check for the balance as full payment, neither the correspondence nor the check was admissible, where defendants' tender was not accepted as a tender in full, but only as payment on account.

3. **Monopolies ⬦23—Right to recover on contract of sale held not prevented by violation of anti-trust law.**

In an action by a corn products company for the purchase price of glucose sold, where

defendants admitted the indebtedness, a violation of the Anti-Trust Law by plaintiff in selling the goods constituted no defense.

**4. Monopolies ⬿23—Plea setting up violation of state monopoly statute demurrable 'where not alleged that illegal transaction occurred within state.**

In an action by a corn products company for the purchase price of glucose sold, a plea setting up a violation of the state statutes prohibiting pools, monopolies, trusts, or combinations in restraint of trade *held* properly sustained, where they did not aver that the combination was formed, carried on, or maintained within the state, or that the transactions out of which plaintiff's cause of action arose occurred in the state.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the Corn Products Company against Dreyfus Bros. on the common counts. Judgment for the plaintiff, and the defendants appeal. Affirmed.

The following are the pleas referred to in the opinion:

(3c) That prior to the institution of this suit the demand sued upon was in dispute between the plaintiff and defendants, and defendants, before suit brought, paid to the plaintiff the sum of $313.85, under the following circumstances, namely:

Defendants, having received from the plaintiff during the month of December, 1908, a request that defendants furnish it a statement of all glucose purchased by defendants from plaintiff during the year 1908, wrote a letter to the plaintiff, to wit, December 31, 1908, inclosing a statement of account, which letter and statement are as follows:

"12/31/1908.

"Corn Products Refining Co., Chicago, Ill.— Gentlemen: Agreeable with your request that we furnish you by Jany. 1st–09 with a statement of glucose purchased of you during the year 1908, we beg to hand you herewith a detailed statement of such purchases and have charged your account with $587.75 amount due us on said purchases.

"Very truly,
"D. R. D/J.                    Dreyfus Bros."

Glucose Bought of the Corn Products Refining Co., from 1/7 to 11/21/08.

| 1—7 | 60 | bbls. | 39810 |
|---|---|---|---|
| 2—17 | 60 | " | 39887 |
| 4—2 | 60 | " | 39937 |
| 5—19 | 57 | " | 38169 |
| 6—26 | 60 | " | 40439 |
| 8—25 | 61 | " | 40045 |
| 9—23 | 50 | " | 33910 |
| 10—8 | 53 | " | 35508 |
| 10—31 | 53 | " | 35672 |
| 11—21 | 53 | " | 35122 |

378497 @ 15¢  567.75

And on the 2d day of February, 1909, the defendants wrote plaintiff a letter inclosing their check on the First National Bank of Montgomery, Ala., dated February 2, 1909, in favor of the plaintiff for the sum of $313.85, which letter and check are as follows:

"2/2/1909.

"Corn Products and Refining Co., Chicago, Ill.—Gentlemen: In remitting to cover your invoices of the 1/19 and 1/21 we have deducted 15¢ cwt. overcharge on your invoice of the 1/21 and $567.75 amount due us on the profit-sharing plan on your purchases of you during 1908. In making the above-stated deductions we of course waive our rights to any further participation in your profit-sharing plan. While we appreciate the fact that you have many thousands of larger customers than ourselves, we feel safe in saying that you have not a single account on your books that has been more loyal to you than ourselves and for which loyalty we feel that very little appreciation has been shown. We have at times favored you with orders for glucose at prices anywhere from 20 to 50 points above competitors' prices, anticipating, of course, that the refund to us under your profit-sharing plan would absorb at least the greater portion of such differences, and then to receive only 15¢ cwt. rebate on our purchases of glucose from you during the year 1908 has placed us at a disadvantage with many of our strongest competitors which we can no longer stand for and cause us on our purchases of glucose of you during 1908 a loss much greater than the amount due us by you on our 1908 purchases of glucose amounts to. Save in one or two instances, our business relations with you have been of a very pleasant nature, and, all things being equal, we shall be glad to continue to favor you with the bulk of our glucose business and which we think is all that you can possibly ask or expect of us.

"Very truly,              Dreyfus Bros."

"No. 17229.        Dreyfus Bros.

"Montgomery, Ala., Feb. 2, 1909.

"Pay to the order of Corn Prod. Refn'g Co., three hundred thirteen 85/100 dollars.  $313.85 "First National Bank, Montgomery, Ala.

"[Signed] Dreyfus Bros."

Indorsements:

"Pay to the Merchants' Loan & Trust Company, 25 Chicago, Ill., or order  25.

"Corn Products Refining Co.

"A. E. George.

"Pay Merchants' National Bank, Baltimore, Md. All prior indorsements guaranteed. The Merchants' Loan & Trust Co., of Chicago, J. G. Orchard, Cashier."

On, to wit, the 4th day of February, 1909, the plaintiff addressed and mailed a letter to the defendants returning the aforesaid check, which letter is as follows, to wit:

"Chicago, February 4, 1909.

"Dreyfus Bros., Montgomery, Ala.—Gentlemen: We beg herewith to return your check No. 17229 drawn to this company's order for $313.85 inclosed in your letter of February 2d and purporting to settle in full our invoices of January 19th and 21st amounting to $937.67.

"We inclose herewith a copy of our circular letter sent you under date of December 9th which embodies the terms and conditions upon which our customers become entitled to share in profits and beg to advise you that, when

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

compliance with said terms is shown, remittance will be made to you in accordance with said terms.

"In the meantime we respectfully call your attention to the fact that one of the conditions upon which our customers become entitled to share in profits is that all invoices covering shipments are paid for in full in cash, and we express the hope that you will not through ill advice adopt a course that will deprive you of your rights to share in profits. Respectfully yours, Corn Products Refining Company, [Signed] E. E. Van Sickle, Manager Glucose Department. E. E. V. S. M. M. Enc."

On, to wit, the 6th day of February, 1909, the defendants addressed and mailed a letter to the plaintiff, returning to the plaintiff, the aforesaid check, which letter is as follows, to wit:

"2/6/1909.

"Corn Products Refining Co., Chicago, Ill.— Gentlemen: Your favor of the 4th to hand and contents of same noted. We again beg to return herewith our check sent you, less amount due us as per our ledger charge to your account, and which settlement, if not satisfactory to yourselves, you are at liberty to take any legal action that you might see fit to secure payment of any further amount for which you might feel that you have any claim on us, and we think that we are fully prepared to defend any such action. We acted against our better judgment in confining our purchases of glucose for the past 2½ years exclusively to your corporation, and the big financial loss that we have suffered through doing so causes us to see now much plainer than we ever did before the serious mistake that we made and how little appreciation was shown for the patronage accorded you.

"Very respectfully,
"D. R. D./g.                    Dreyfus Bros."

On, to wit, March 20, 1909, Mr. Fred S. Ball, an attorney of Montgomery, Ala., addressed and mailed a letter on this subject to the defendants, which letter is as follows:

"Montgomery, Ala., March 20, 1909.

"Dreyfus Bros., City—Gentlemen: I have received from Corn Products Refining Company an account against you for $939.67, with instructions to file suit for the collection thereof immediately, which I am doing. On February 2, 1909, you sent to that company your check for $313.85 in settlement of your account, after deducting certain items referred to on the statement which accompanied the check, and which you probably meant in full settlement of your account. On February 4th that check was returned to you with a letter, which you doubtless have. On February 6th you again sent that check to the company with the statement that it is in full of the account. On February 8th the company wrote you acknowledging receipt of the check and stating that it had credited your account with amount thereof, leaving a balance due by you of $625.82, and stating that payment of that balance must be made by March 1st, or the account would be placed in the hands of its attorney for collection.

"As you are aware, the check has not been cashed. Upon receipt of this letter, let me know whether you desire this check to be used as a payment on whatever you may owe the company; otherwise I shall understand that you desire it to be accepted as a payment on account.

"Yours truly,     [Signed]  Fred S. Ball."

On, to wit, March 22, 1909, defendants addressed and mailed a letter to the said Ball on this subject, which letter is as follows: to wit:

"3/22/1909.

"Mr. Fred S. Ball, Attorney at Law, City— Dear Sir: We are in receipt of your letter of date of March 20th, advising that you had received from the Corn Products Refining Co. an account against us for $939.67 with instructions to file suit immediately for the collection thereof and which you had done and which action taken is perfectly satisfactory to us. With the proper credits to which we are entitled to on the books of the Corn Products Refining Company given us, we are not due the aforesaid concern the sum of 1 cent.

"We are not, as you seem inclined to think, aware of the fact that the check sent the Corn Products Company to balance our account with them has never been cashed as the time that has elapsed between February 6th, the date of which our check was returned to the Corn Products Company, and the present is sufficient for the check to have been collected several times over, and we had no reason to know otherwise than that our check had been cashed until we received your letter of above-stated date. The check sent the Corn Products Company is to cover every cent due them, and can be applied in any manner that the Corn Products Company might see fit to apply same.

"Yours truly."

And on the same date defendants addressed and mailed a letter to the plaintiff, which letter is as follows:

"3/22/1909.

"Corn Products Co., Chicago, Ill.—Gentlemen: We are just in receipt of a letter from Mr. Fred S. Ball, an attorney of this city, advising that he had received an account from you against us for $939.67 with instructions to file suit for the collection thereof immediately and which he had done, and we have advised Mr. Ball that such proceedings will be highly satisfactory to ourselves. With the proper credit to which we are entitled given us on your books, we are not due you one cent. We have been in business about ten years without a single lawsuit, but the present one will be welcomed by us and the final results of which will be given considerable publicity.

"Very fortunately for us, we are not dependent upon the candy business for a living, and in paying 100 cents for every dollars worth of goods that we buy, when the time comes that we have got to allow ourselves to be dictated to by any combination of interest no matter how powerful, then we are ready to quit.

"Very truly,          Dreyfus Bros.".

On, to wit, March 23, 1909, the said Ball addressed and mailed a letter on this subject to the defendants as follows, to wit:

"Montgomery, Ala., March 23, 1909.

"Dreyfus Bros., City—Gentlemen: Corn Products Refining Co. v. Dreyfus Bros. Yours

of the 22d has been received, and I have sent your check back to the Corn Products Refining Company, to be used by it. The check will be deposited in the regular course, and credit will be given to your account, with the distinct understanding, of course, that it is not accepted in full settlement. This I understand to be in accordance with your letter to me of the 22d inst.

"Yours truly, [Signed] Fred S. Ball."

And defendants aver that, notwithstanding the matters and things in said letters contained, and which constituted the entire transaction between the parties with respect to said payment, the plaintiff accepted and used said check. Wherefore defendants aver that there was an accord and satisfaction of the said demand.

The following is plea 3 as amended:

(3) That prior to the institution of this suit the demand sued upon was in dispute between the plaintiff and the defendants, and defendants before suit brought paid to plaintiff the sum of, to wit, $313.85, informing the plaintiff at the time of such payment that said sum was paid as in full payment or satisfaction of the plaintiff's demand, which said sum the plaintiff accepted and has ever since retained; wherefore the defendants say that the payment by them of said sum was an accord and satisfaction of the plaintiff's demand.

The following are pleas 6, 7, and 8:

(6) That the plaintiff ought not to have and maintain this suit for that the alleged debt or demand in said complaint mentioned arose under, and only under, a special contract by and between the plaintiff and the defendant, and defendant avers that said contract is void in that at the time said contract was made the plaintiff was an unlawful combine, a trust or monopoly, in that it was organized and created solely for the purpose of controlling, or in attempting to control, the market price of glucose and other corn products, and thereby creating a monopoly in the sale of glucose and corn products, and that the contract hereinbefore mentioned was made and entered into for the sale by the plaintiff to the defendant of glucose at a price greatly in excess of the market value of glucose.

(7) That the plaintiff ought not to have and to maintain its aforesaid action, for that the demand in said complaint sought to be recovered grew out of a special contract made and entered into between the plaintiff and the defendant for the sale of glucose, which said contract was illegal and void, for that the plaintiff was at the time said contract was made a corporation created and organized for the purpose of monopolizing or attempting to monopolize the production, control, or sale of glucose and other corn products, and that said contract was made for the purpose and with the intent on the part of the plaintiff to carry out said unlawful purpose, and was and is in violation of the public policy in this state and void.

(8) That the claim for which the present suit is brought was founded upon a contract entered into between the plaintiff and defendants, and that at the time of entering into said contract the plaintiff was an unlawful trust or combine organized for the purpose of controlling or attempting to control, monopolizing or attempting to monopolize, the manufacture and sale of glucose and other corn products; that the product sold by the plaintiff to defendant under said contract was glucose; at the time of entering into said contract, defendant was unable to purchase and have delivered to it properly as their business demanded from any other manufacturer; that the plaintiff, well knowing this, exacted of the defendant a price greater and in excess of a fair and reasonable cost in profit; that thereby the defendants were damaged in the amount of, to wit, $2,500, which they hereby offer to set off against the claim of the plaintiff, and they also offer to set off $500 damages, both of which sums they hereby claim.

Steiner, Crum & Weil, of Montgomery, for appellants.

Plea 3 and plea 3 as amended were entirely sufficient, and the court erred in sustaining demurrers thereto. 137 Ala. 561, 34 South. 829; 195 Ala. 579, 71 South. 97; 158 N. Y. Supp. 682. Court was in error in sustaining demurrers to those pleas setting up an unlawful combination. 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486. The court erred in sustaining demurrer to the other plea.

Ball & Beckwith, of Montgomery, for appellee.

The transaction was one of interstate commerce, and section 2487, Code 1907, is without application. 7 Cyc. 445; 9 Cyc. 664; 27 Cyc. 910; 92 Ala. 157, 9 South. 141. The pleas of accord and satisfaction are not good. 192 Ala. 91, 68 South. 871; 195 Ala. 579, 71 South. 97. The pleas attempting to set up an illegal agreement in violation of the Anti-Trust Act were subject to the demurrers. 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; 212 U. S. 227, 29 Sup. Ct. 280, 53 L. Ed. 486. The profit-sharing arrangement contained no element of fraud or illegality. 236 U. S. 165, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; 221 U. S. 106, 31 Sup. Ct. 632, 55 L. Ed. 663; 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694. In any event, the penalties were not usable as they set up. 34 Cyc. 655; (C. C.) 130 Fed. 633.

BROWN, J. [1] The averments of defendants' plea 3c, when construed most strongly against the pleader, as must be done on demurrer, shows there was no dispute between the parties as to the amount or justness of plaintiff's demand against the defendants, but that the dispute was in respect to the set-off claimed by the defendants. The defendants could not, without the consent of the plaintiff, apply a counterclaim or cross-demand to the admitted indebtedness due the plaintiff, and thereby reduce the amount of

the plaintiff's demand, or create a dispute in respect to the amount due thereon. Wharton v. King, 69 Ala. 365. For this reason, on the facts stated in the plea, the cases of Hand Lbr. Co. v. Hall, 147 Ala. 561, 41 South. 78, and Bracken v. Owen Horse & Mule Co., 195 Ala. 579, 71 South. 97, are inapt as authorities to sustain the sufficiency of defendants' plea.

[2] For like reason the plaintiff's objections to the correspondence between the parties and the check set out in plea 3c and offered as evidence to sustain the defendants' plea 3 as amended were properly sustained. These objections were properly sustained for another reason. When the correspondence between the parties is considered as a whole, it clearly shows that the defendant's tender was not accepted as tendered, but was only accepted as a payment on the account. Reliance Life Ins. Co. v. Garth, 192 Ala. 91, 68 South. 871.

[3] The questions presented by the rulings of the court on the demurrers to the defendant's pleas attempting to set up a violation of the act of Congress known as the "Anti-Trust Law" cannot be differentiated from the questions considered by the Supreme Court of the United States in D. R. Wilder Mfg. Co. v. Corn Products, etc., Co., 236 U. S. 165, 35 Sup. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118, and on the authority of that case the ruling of the trial court on the demurrers must be upheld.

[4] The demurrers to pleas 6, 7, and 8 setting up a violation of the statutes of this state prohibiting pools, monopolies, trusts, or combinations in restraint of trade were properly sustained for the reason that they do not aver that the alleged pool, monopoly, trust, or combination in restraint of trade was formed, carried on, or maintained in this state, or that the transaction out of which the plaintiff's cause of action arose occurred in this state. Anderson v. U. S., 171 U. S. 615, 19 Sup. Ct. 50, 43 L. Ed. 300; U. S. v. E. C. Knight & Co., 156 U. S. 1, 15 Sup. Ct. 249, 39 L. Ed. 325; State v. Phillips, 50 Kan. 609, 31 Pac. 1079, 18 L. R. A. 657, 34 Am. St. Rep. 152; 27 Cyc. 910, B.

The defendant's plea 11 sets up the same defense as embodied in plea 3 as amended, and to which the plaintiff's demurrers were overruled; and plea 18 is in substance the same as plea 16 on which issue was joined. Therefore the ruling of the court on the demurrers to these pleas, if error, was without injury.

We find no reversible error in the record. Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.