## WHITE DAIRY CO. v. SIMS.

6 Div. 659.

Supreme Court of Alabama.

May 16, 1935.

Rehearing Denied June 20, 1935.

J. P. Mudd, of Birmingham, for appellant.

J. L. Drennen and John W. Altman, both of Birmingham, for appellee.

GARDNER, Justice.

Plaintiff's car and defendant's truck collided at the intersection of Eighty-Fourth street and Sixth avenue in the city of Birmingham. The truck approached the intersection on the right of plaintiff's car, and struck the car on the right side.

Plaintiff's evidence tended to show that her car approached the intersection at a speed of twenty to twenty-five miles an hour, and stopped as it reached the intersection for the truck, coming at a speed of 30 to 35 miles an hour down the incline, to pass with ample room in the traveled portion of Eighty-Fourth street for such purpose and with entire safety; and that, instead of so passing, the driver of the truck swerved to the left out of the traveled pathway and into her car.

In this view of the case plaintiff had observed the rule of the road. General Acts 1927, p. 372 (section 64). But this testimony was not without contradiction, as the testimony of the driver of the truck tends to show that the truck and plaintiff's car approached this intersection at approximately the same time, the speed of the truck being at the rate of ten or fifteen miles per hour, and when the two vehicles collided, plaintiff's car was "in the intersection of the street, on the traveled space," never having stopped traveling. He further testified: "I was coming down there approximately fifteen miles an hour. I just saw the Studebaker car when I was within about thirty feet of the intersection. * * * It was * * * traveling westward on Sixth Avenue. The rear wheels of the car were standing on the bridge, and the fact of the business is, the car never stopped traveling so far as I could detect. I noticed it coming when I was about thirty feet from the intersection, and I slackened my speed, * * * and * * * applied my brakes, and when I came to about thirty feet of the intersection, which is a blind intersection, I began stopping. * * * the rear wheels were on the bridge, with the front part of the car in the line of travel, which prevented me from continuing my course. I undertook then to cut the truck to the left, thinking the car would travel on and I would go behind it. When the actual contact took place, I would say I was going around five miles an hour. My right hand fender and head light came in contact with the Studebaker."

At plaintiff's request, the court gave the following written charge: "While it is true that when two motor vehicles approach an intersection of two highways, the one on the right has the right of way, yet, if under all the testimony of this case you are reasonably satisfied that the truck of defendant did not enter the intersection until after the motor car of the plaintiff had already approached and entered the intersection, then the truck of the defendant no longer had the right of way."

Under the undisputed testimony of all parties, defendant's truck entered the intersection after plaintiff's car, and, therefore, the jury could only understand from this instruction that the defendant's truck, as a matter of law, did not have the right of way. But, as already observed, the proof was in dispute, and the defendant's testimony tended to show the two vehicles approached or entered the intersection at approximately the same time, thus placing upon the driver of plaintiff's car the duty of yielding the right of way to defendant's truck approaching on the right. This by virtue of the above-noted act of 1927. This statute found comment and was given application in Echols v. Vinson, 220 Ala. 229; 124 So. 510, 511, where it was observed that its purpose was to change the rule previously prevailing, and substitute a "uniform regulation as to crossings at street and highway intersections," wherein it was said: "By the greater width of one street over another, and the accelerated speed of one car approaching the intersection, in order that it may be the first to enter and thus gain the right of way, the authorities doubtless reached the conclusion that the old rule tended to multiply collisions and confuse the traffic. The simple rule of the statute was therefore adopted. If the two cars approach or enter the intersection at approximately the same time, the car on the right has the right of way and the duty devolves on the driver of the car on the left to yield—a duty not difficult of observance. It is a rule intended to stimulate precaution, and prevent collision."

So likewise here, as in the Vinson Case, supra, one of the issues presented in the trial was that of contributory negligence on plaintiff's part, as an answer to the simple negligence count.

As we read the oral charge of the court, it also contains language of similar import of that embraced in the written charge. The effect of the instruction was to eliminate the issue of contributory negligence, and that the

811

action of the court in giving the same was prejudicial cannot well be controverted.

True, plaintiff's evidence tended to show her car had just barely entered the intersection, and came to a full stop with ample room for passage of the truck in the traveled portion of the highway, and without offering any obstacle thereto, all of which merely tended to show that there had been substantial observance of the rule, according to defendant's truck the right of way; and the argument of counsel for plaintiff assumes that such was the situation.

But the testimony of the driver of the truck is to the contrary, and tends strongly to show a clear nonobservance of the rule, thus presenting a disputed issue of fact for the jury's determination.

The case of Echols v. Vinson, supra, was approvingly cited in Brown v. Bush, 220 Ala. 130, 124 So. 300, and J. C. Byram & Co. v. Livingston, 225 Ala. 442, 143 So. 461, and the rule of the statute therein noted, was given full application in the more recent case of Dudley v. Alabama Utilities Service Co., 225 Ala. 531, 144 So. 5.

But enough has been said, we think, to clearly demonstrate the prejudicial error committed in giving this instruction, and further discussion is unnecessary.

 Other questions presented may not arise upon another trial, and need no separate treatment.

We have not overlooked plaintiff's insistence that assignments 7, 8, 9, and 10 are argued in bulk, and, therefore, present no reversible error, if any one assignment is not well taken; citing City of Montgomery v. Moon, 208 Ala. 472, 94 So. 337. But it is well established that several assignments of error raising kindred questions may be presented under the same argument. Polytinsky v. Johnston, 211 Ala. 99, 99 So. 839; Moore v. First National Bank, 211 Ala. 367, 100 So. 349, 34 A. L. R. 526. And in Wells Co. v. Lane, 217 Ala. 10, 115 So. 77, this court took occasion to correct an evident misapprehension of the ruling in this regard in such cases as City of Montgomery v. Moon, supra, and Bush v. Bumgardner, 212 Ala. 456, 102 So. 629, saying: "It frequently occurs that a number of assignments of error are so related as may well be argued together in brief, and such method of treatment under such circumstances is entirely proper."

Complaint as to the action of the court in each of the charges embraced in these assignments of error is rested upon the one contention as to plaintiff's duty to observe the rule of the right of way, and the argument is the same as related to each such charge. Under such circumstances, this argument in bulk was unobjectionable.

For the error indicated, the judgment must stand reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.