157 So.2d 682

**J. B. HUNT**

v.

**Floyd D. GRISSOM.**

**7 Div. 707.**

Court of Appeals of Alabama.

Nov. 12, 1963.

1. The sheriff's return shows service on all three.

Maurice F. Bishop, Birmingham, Richard B. Emerson, Anniston, for appellant.

Knox, Jones, Woolf & Merrill, Anniston, for appellee.

CATES, Judge.

Mr. Grissom got a $700.00 general verdict against Mr. Hunt. From the judgment thereon and the judgment overruling the motion for new trial, Hunt appeals.

In 1956, Hunt, employed in the State Highway Department, took part in a field inspection with a number of other highway employees. This was in Calhoun County over what is now the Piedmont By-Pass.

Grissom owned land, some seventy-five acres, about 300 to 400 yards from this new road. Before the road was built, the surface waters from the land above Grissom's flowed—he averred—in wide diffusion "and there was no damage to plaintiff's land by reason of the flow of such surface waters."

In connection with the road work, the surface waters were channeled into a large ditch and have thus been caused to flow therein toward Grissom's land. A short distance from this land these gathered waters are discharged "in great and unusual quantities which go upon and over" his land.

The general charge of the trial judge gave the case to the jury on Counts One, Three and Four.

Count One charged that Hunt, "In connection with, and as a part of the construction of said Road, * * * [had] the duty * * * as [an] employee(s) in the State of Alabama Highway Department, to prepare, or to substantially assist in the preparation of, the plans and drawings for said Road, and to indicate thereon the land that would have to be acquired, and the land that would suffer substantial damage, by reason of the construction of said Road in accordance with said plans and drawings"; that Hunt worked in such preparation or assistance. But "said plans and drawings did not indicate thereon that the said land of [Grissom] would have to be acquired, or * * * suffer substantial damage by reason of the construction of said Road in accordance with said plans and drawings, although [Hunt] knew, or should have known, that [such] construction * * * would result in such damage to [Grissom's] land."

Count Three charged Hunt supervised or substantially assisted in supervising the construction. Part of this construction was alleged to have caused the channeling or collecting of the surface waters so as to cause them to flow upon and over Grissom's land in great and unusual quantities.

Count Four alleged Hunt knew or should have known that the construction (per the

plans and specifications) would result in considerable damage to Grissom's land by reason of collecting the surface waters, etc. This construction, Grissom pleaded, was inspected or supervised by Hunt.

The background of this case comes from the Law's tendency to confine narrowly the doctrine, "The King can do no wrong." This medieval notion had at least two germinal aspects. *First*, the King was answerable to God—whose judgment was far more severe than an earthly guillotine or gibbet. *Second,* the King in his own court was the judge. Though Coke (Case of Prohibitions (1608), 12 Co.Rep. 63 at 65) finally established that learning in the law was indispensable in a judge, still this species of learning is still dispensed as from the Bench of the King. No man can be judge in his own cause. Was the King leaning over backward to say that when he was a party there was no place for a fair trial in the realm? This though he could sue at will.

Henry VIII's Act of Establishment 1534, making the King head of the Church, influenced this notion of immunity by removing the Pope as capable of legally judging the King of England. Messrs. Copeland and Screws, in their Governmental Responsibility for Tort in Alabama, 13 Ala.Law Rev. 296, have collected English and American authorities which bring the study from feudal times to date.

After quoting from Cockburn, C. J., in Feather v. Reg. (1865), 6 B. & S. 257 ("the King cannot authorize wrong. For [that] is to do a wrong."), Professor Frederick Lawson, in Constitutional Law, in Book II of Vol. IV, Stephen's Commentaries (19th Ed.) says, at p. 541:

"* * * It is true that the significance of the Crown servant's liability in tort is not limited to its availability as a means of bringing pressure on the Crown to redress a tortious injury; it *is also a very important safeguard* against the lighthearted commission of illegal acts by officials. But actions in tort against Government officials are habitually regarded as actions against the Government, though the Crown is never under a legal liability to defend the official or to satisfy any judgment awarded against him. Moreover, it is now possible to bring an action against the Attorney-General for a declaration that a course of action contemplated by the Crown is illegal. * * *"

Probably the most extreme English case is Earl Danby's Case (1678–1685), 11 St.Tr. 599, where neither the King's command nor his pardon could avail Danby against impeachment for participating in bringing about the humiliating Treaty of Dover.

In 1931, Finnell v. Pitts, 222 Ala. 290, 132 So. 2, was made final, with judgment against the holders of the offices of Highway Director, commissioners of the State Highway Commission, two Highway Commission engineers, together with the contractors, each as an individual. Though Thomas, Bouldin and Brown, JJ., dissented (each expressing his own opinion), Finnell v. Pitts has *not in these thirty years been changed ei-*ther judicially or by the Legislature.

Thus in 1961, we find Mr. Justice Simpson speaking for the court in St. Clair County v. Town of Riverside, 272 Ala. 294, 128 So.2d 333:

"* * * A state's immunity from suit does not apply when 'officers under a mistaken interpretation of the law acting in the name of the State commit acts not within their authority which are injurious to the rights of others.' Curry v. Woodstock Slag Corp., 1942, 242 Ala. 379, 6 So.2d 479, 480. Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13; Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11; Finnell v. Pitts, 222 Ala. 290, 132 So. 2. In 49 Am.Jur., States, Territories, and Dependencies, pp. 308–310, the following observation is pertinent:

"'Nor does the immunity of the state from suit relieve an officer of the state

from responsibility when he acts tortiously on the rights of an individual, or in excess or violation of his authority, even though he acts or assumes to act under the authority and pursuant to the directions of the state. * * * An officer who acts illegally is not acting as an officer, but stands in the same light as any other trespasser.' "

And in Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193:

" * * * Though the alleged taking was for the benefit of the state, such action, as alleged, was without authority of law. Even the state could not authorize an unlawful taking."

The Propositions of Law are set out in Hunt's brief as:

### I.

"Employees of the State Highway Department are *not* liable for alleged damage to non-contiguous property, allegedly arising out of the fusion of surface waters in connection with the construction of a highway."

### II.

"The *State* is not liable for consequential damages resulting from construction or enlargement of public works where there is no taking." (Italics added.)

### III.

"An upper land owner has the right to ditch and drain his own land as he pleases provided that he does no more than concentrate the water and cause it to flow more rapidly and in greater volume on or across the inferior heritage."

### IV.

"The servient owner of land is subject to drainage easement in favor of those owning adjacent land on a higher level."

### V.

"Where land is temporarily used, the rule of damage applicable is the value of the use of the land during the period of the use, plus any damages or depreciation in value of the property by reason of the use, less any benefits, general or special, or enhancement to the subject property."

### VI.

"The test in determining whether argument was prejudicial so as to require reversal is not whether argument did unlawfully influence the verdict, but whether it might have done so."

### I.

Grissom correctly points out in his reply brief that Section I of Hunt's brief argues 17 assignments of error in bulk. A common thread of argument to guide us through the maze from the claimed legal rule to its factual application is discussed by Mr. Justice Merrill in Southern Electric Gen. Co. v. Lance, 269 Ala. 25, 110 So.2d 627:

" * * * we have held that related or kindred assignments of error may be argued together and that practice has been commended. Southern Railway Co. v. Cates, 211 Ala. 282, 100 So. 356; Polytinsky v. Johnston, 211 Ala. 99, 99 So. 839. The rule that we consider no assignments of error when more than one are argued together and one is without merit applies only when they are not kindred or related. In Thompson v. State, 267 Ala. 22, 99 So. 2d 198, 200, we said: 'When unrelated assignments of error are argued together and one is without merit, the others will not be considered.' In Hartford Fire Ins. Co. v. Clark, 258 Ala. 141, 61 So.2d 19, 27, we said:

" ' * * * Where the assignments of error are so related as that they may be treated as being predicated upon a

single argument, the fact they are argued in bulk is not objectionable. But that principle does not apply where the assignments of error are not dependent upon the same legal principles. * * *'

"There is a discussion of this point in White Dairy Co. v. Sims, 230 Ala. 561, 161 So. 812[2]. See also, Socier v. Woodard, 264 Ala. 514, 88 So.2d 783 [8]."

The appellant's argument under Section I of his brief covers generally the standard of conduct of a public employee charged with tortious conduct by an injured landowner. Thus Hunt here had requested written charges variously basing liability on whether he had acted "maliciously," "corruptly," "without authority," "in bad faith," "unreasonably," "negligently," or "dishonestly in the exercise of confided discretion."

■ However, lumped in with the refusal of these charges was one which has come to be called "the single juror" charge. The refusal of this mode of expressing the need for unanimity in a verdict is now no longer a source of reversible error. City of Birmingham v. Bowen, 254 Ala. 41, 47 So.2d 174 (charges 5 and 6 particularly); Greyhound Corporation v. Brown, 269 Ala. 520, 113 So.2d 916 (charge 10).

■ This principle is in nowise related to appellant's Propositions of Law I or II. Also, the assignment of the refusal was not valid under the cited cases.

Therefore, the argument in bulk in Section I requires us to forego review of the assignments in this group. Callahan v. Booth, 275 Ala. 275, 154 So.2d 32.

## II.

Section II groups the ruling of the trial judge in refusing written charges which (a) were affirmative in nature, or (b) laid down standards of conduct. We outlined the critical adverbs above.

Proposition of Law II purports to define the nonliability of the State for consequential damages absent a taking of private property. Section II, however, tries to wrap this asserted rule of law in with the employee's liability.

Constitution 1901, § 14, prohibits suits against the State. Finnell v. Pitts, supra, made the Highway Commissioners personally liable for road work which backed water up on Pitts's land.

■ So far as the rules of decision laid down by the majority of the Supreme Court of Alabama require obedience, this is a stare decisis court. Code 1940, T. 13, § 95. "Theirs not to reason why * * *."

■ The majority opinion in Finnell v. Pitts, supra, we construe not as resting on the immunity of the State. Rather, we think it puts a duty (e. g., dissenters Bouldin and Brown, JJ., referring to mandamus) on the public agent to deal justly with members of the public within the ambit of his activities.

■ Also, the defendant's written charge 25 was bad because argumentative.

## III.

Section III, as did Section I, groups the refusal of charge 35—the single juror charge—with unrelated assignments. Also, charge 33 would have imposed only nominal damages on Hunt which we consider not bearing on Proposition of Law II cited in this section.

## IV.

■ This section puts forward argument as to the claimed right of a higher landowner to concentrate the surface waters onto his lower neighbor. See Propositions of Law III and IV.

This argument overlooks two points: *first,* the appellant was never shown to be an upper landowner; and, *second,* nothing shows that there was a fee title in the State beyond the road boundaries.

## V.

This argument advances the value of use together with other elements to be added and subtracted as the measure of damages for a taking for a determinate period.

■ Charge 29 was palpably bad, if for no other reason than the fact that it limited damages "for the period when such flooded condition existed." This would ignore the time needed for the land to dry and the brushwood to be cleaned off.

Appellee in his brief also points out that there is in the record testimony which "shows that flooding conditions caused by the building of the By-Pass resulted in washing away the top soil on the plaintiff's farm, it required the plaintiff to cease his farming operations and * * * his land to be put in pasture. Certainly, there is nothing temporary about this kind of damage."

The appellant's argument is based on a "taking" for period determined (which is inferable here from some of the evidence showing work done to abate the concentration) being like a leasehold. Thus, it is urged that rental value, plus the cost of extraordinary wear and tear, would make the landlord whole. But can it be said that this is eminent domain through the back-door?

■ The oral charge used the formula of difference between reasonable market value of the land before the injury and afterwards. This affords ordinarily the proper measure of damages in tort for injury to land. Central of Georgia Ry. Co. v. Keyton, 148 Ala. 675, 41 So. 918 (opinion in So.Rep. only). Therefore, Code 1940, T. 7, § 273 (4th Sent.), serves to obviate further consideration of Hunt's refused charges 29–32.

## VI.

Proposition VI finds support in the cited authorities. However, the factual setting of the three assignments from the trial of the instant case affords no occasion to apply the rule as to prejudicial argument of counsel.

Assignments 39–41 pitch claims of error on the court's overruling objections to plaintiff's counsel's final argument.

We excerpt the entire record on these points:

"(Argument of case to jury, during which the following transpired:)

"MR. MERRILL: Mr. Bishop, in his argument to you made the statement that he did not think it was right to penalize and punish Mr. Hunt by rendering a judgment against him, which he would have to pay. Do you think that Mr. Hunt will be required to pay any judgment which would be rendered against him in this case?

"MR. BISHOP: We object, Your Honor.

"THE COURT: All right. I will overrule the objection on the basis that it is an answer to an argument previously made.

"MR. BISHOP: We except.

"(Further during argument:)

"MR. MERRILL: I will ask you if you think it isn't right about the participation of the Alabama Highway Department.

"MR. BISHOP: We object.

"THE COURT: Overruled.

"MR. BISHOP: We except.

"MR. MERRILL: (Continuing argument) I will ask you if you think that Mr. Hunt will be punished if judgment is against him?

"MR. BISHOP: Objection.

"THE COURT: Overrule the objection."

In cases such as this, the Legislature has often assumed the prerogative of passing

Relief Acts. Thus, Finnell v. Pitts, supra, was satisfied at State expense under Act 391 of July 15, 1931 (1931 Gen.Acts, p. 462).

References to whether or not the public treasury will foot the bill—though there be no more than a moral obligation—would seem as improper as would a statement as to a defendant's having insurance to indemnify him. Williams v. City of Anniston, 257 Ala. 191, 58 So.2d 115; Christison v. State, 39 Ala.App. 175, 96 So.2d 701.

■ But we consider the first instance of argument objected to—though alone improper—comes within the permissible latitude of response to like argument by opposing counsel.

The second, as to the participation of the Highway Department, lies disconnected. On the fragment given, we could speculate as to whether counsel was calling attention to the participation of the Highway Department with other governmental bodies, or its employees testifying for the defendant, or its counsel representing him, or State (or Federal) funds standing ready to indemnify him against the judgment asked for.

We cannot assume that Mr. Hunt's being punished, if judgment went against him, is prejudicial.

Proof of wantonness in keeping up drains can result in punitive damages. Central of Georgia Ry. Co. v. Keyton, supra. Here there was no allegation of Mr. Hunt's being reckless toward the effect on Mr. Grissom's land under any of the Counts which went to the jury.

However, since the context quoted indicates that Hunt's counsel had made some argument to the jury urging them not to punish or penalize him by way of judgment, the third incident of objection certainly could be classed as responsive.

The judgment is due to be

Affirmed.