This appeal arises from a judgment entered in the Circuit Court of Lauderdale County, wherein the court determined that the defendants, James Ray and Wanda Ray, owed the Alabama Central Credit Union a balance on two promissory notes. We affirm.
The salient facts in the litigation are as follows.
On January 31, 1979, Alabama Central Credit Union loaned appellant James Ray $64,864.82, plus an advancement of $9,000.00, or a total of $73,864.82. Ray executed a promissory note to the Credit Union for the $73,864.82, plus interest at 12% per annum. The promissory note was secured by a real estate mortgage from Ray to the Credit Union on a 2.5-acre tract of land.[1]
On August 3, 1979, James Ray and Wanda Ray executed a promissory note for $10,152.80, plus 12% interest per annum, to Central Bank of Alabama. This note was secured by a real estate mortgage given by James and Wanda Ray to Central Bank on a 5-acre tract of land. Also, the bank was given a second mortgage on the 2.5-acre tract.
The Rays defaulted on their payments under the Central Bank note, and Central Bank subsequently initiated foreclosure proceedings. It was at this time that the parties learned that the Credit Union had a first mortgage only with respect to the 2.5-acre tract, and that Central Bank had a first mortgage on the 5.0-acre tract, rather than the Credit Union having a first mortgage on all 7.5 acres, as was originally intended by the parties. Once this was discovered, the Credit Union and James Ray discussed the possibilities of correcting the mistake.
During these discussions it was learned that the house which was built on the property sat partially on both parcels of land, with all but approximately ten feet resting on the 5.0-acre tract. Based upon their discussions and discoveries, the Credit Union decided to purchase the note and mortgage held by Central Bank, and the Rays agreed to execute deeds in lieu of foreclosure, with waiver of equity of redemption, to the Credit Union. This they did on August 31, 1981.
On September 1, 1981, the Credit Union executed an agreement to the Rays stating that any sums received from a sale of the subject property in excess of the mortgage debt and lawful charges would be paid over to the Rays. The Credit Union sold the house and two tracts of land as one parcel for $62,000.00, and applied all of the proceeds from the sale to the debt secured by the 2.5-acre tract ($73,864.82), which left intact the entire debt owed by James and Wanda Ray secured by the 5.0-acre tract. The Credit Union then sued the Rays for the balance remaining on each promissory note. The trial court ordered the Rays to pay the amounts owed on each note, plus interest, attorney's fees, and costs. After their motion for a new trial was denied, the Rays filed this appeal.
The appellants raise two issues for our review:
 1. Whether, as a matter of law, a deed in lieu of foreclosure with waiver of equity of redemption is an accord and *Page 1014 
satisfaction or release of the debt secured by a real estate mortgage; and
 2. Whether, under the facts of this case, the Credit Union made an improper application of the proceeds of the sale of the subject real property.
The Rays argue that the execution of the deeds in lieu of foreclosure with waiver of equity of redemption, coupled with their acceptance by the Credit Union, establishes, as a matter of law, all the elements necessary for an accord and satisfaction which would extinguish the debts owed by the Rays to the Credit Union, regardless of intention disclosed or undisclosed. The Rays argue further that the Credit Union misapplied the proceeds from the sale of the house and land. According to them, 90% of the house was located on the 5.0-acre tract; thus, they say the proceeds from the sale should have been applied, at least proportionately, to pay the $10,152.80 promissory note that pertained to the 5.0-acre tract. The Rays argue that the Credit Union's failure to apply any of the proceeds to the debt owed on the 5.0-acre tract was inequitable, improper, and illegal. We do not agree with either of these contentions.
First, the Rays' argument that, as a matter of law, there was an accord and satisfaction in this case, is without merit. The Court addressed the issue of what constitutes an accord and satisfaction in the case of Craft v. Standard Acc. Ins. Co.,220 Ala. 6, 123 So. 271 (1929), stating:
 The discharge of claims by way of accord and satisfaction is dependent upon contract express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Therefore there must be (1) a proper subject-matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration. 1 R.C.L. 178, § 3; Reliance Life Ins. Co. v. Garth, 192 Ala. 91, 68 So. 871; Dreyfus Bros. v. Corn Products Co., 204 Ala. 593, 86 So. 386. [Emphasis added.]
220 Ala. at 9, 123 So. at 273. We are not persuaded that we should depart from the precedent set in that case. A meeting of the minds, therefore, is an essential element which must be proved in order to establish the defense of accord and satisfaction. This is not a determination of law, but one of fact, based upon the evidence presented. After listening to the testimony of the witnesses and considering the documentary evidence, the trial court agreed with the Credit Union's argument that there was no meeting of the minds and therefore no agreement, on the part of the Credit Union and the Rays, that these deeds in lieu of foreclosure were an accord and satisfaction of the prior debts.
This Court has dealt with accord and satisfaction in its factual context in Biggers v. Ingersoll, 236 Ala. 646,184 So. 478 (1938). In Biggers, as in the case before us, there was no proof of an accord and satisfaction. There the plaintiff, Eula Ingersoll, borrowed money, executed a promissory note for the loan, and secured the note by executing a mortgage on certain real property. After Ingersoll could no longer make her payments, the mortgagor told her that he wanted the property. She relinquished control over the property, and stated that it was her understanding that the mortgagor would take possession of the land, rent it, and apply the money received to the mortgage indebtedness. The mortgagor denied having such an understanding. He said that Ingersoll had not given up anything of value, since he was entitled to the property in any event. Ingersoll did not execute any deed or written agreement to this effect. Upon these facts the court found no proof that the possession by the mortgagor should be considered an accord and satisfaction of the indebtedness.
In the trial below, the branch manager of the Credit Union, Ruth Hester, submitted an affidavit stating that at no time was there any agreement between the Credit Union and the Rays that either of the Rays would be relieved from liability on either debt as a result of the deeds in lieu of foreclosure that were executed. James *Page 1015 
Marks, the attorney employed by the Credit Union, testified that he never discussed anything with the Rays concerning relief from debt in exchange for a deed in lieu of foreclosure. Marks testified that he did discuss the matter with Ruth Hester, and told her that it was his opinion that the Rays could legally waive their right of redemption in a deed in lieu of foreclosure, which would enable the Credit Union to sell the property. He also told her that, in his opinion, a deed in lieu of foreclosure would not relieve the Rays of their responsibilities on the promissory notes that they had executed. Furthermore, appellant James Ray testified several times that he executed the deeds, not to be relieved from the outstanding debts, but because he did not want his credit to be "messed up."
We are of the opinion that there was credible evidence presented to the court upon which it could have found that there was no intent by the parties that these deeds would relieve the Rays of their outstanding debts with the Credit Union. Since there was no meeting of the minds, there was no accord and satisfaction.
The Rays also argue that the Credit Union misapplied the proceeds from the sale of the land and the house thereon. This argument must fail, as did the first, based upon principles of contract law. The parties had a written agreement stating that the Credit Union would turn over to the Rays any excess proceeds they received from a sale of the property. Nowhere in this agreement, or any other agreement between the parties, is there any language which states that the Credit Union must apply the proceeds of a sale in a certain way. Rather, both mortgages contain the following language: "Mortgagee has full power andauthority to make proper conveyance to the purchaser and to applythe proceeds of said sale. . . ." (Emphasis added). Thus, the clause pertaining to the application of the proceeds by the Credit Union gives the Credit Union absolute discretion in the matter. The parties have agreed to this language in writing. The Rays may not now argue that the Credit Union's actions were illegal or improper.
For the above-stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
FAULKNER, ALMON and EMBRY, JJ., concur.
TORBERT, C.J., concurs specially.
[1] This mortgage was supposed to cover 7.5 acres of land, but, due to a mistake in drafting, failed to include one tract of land containing 5.0 acres.