MURDOCK, Justice
(concurring in the result).
I concur in issuing the writ of mandamus in this case. I respectfully decline, however, to join the discussion in note 2 and the accompanying text of the main opinion as to whether the clause in this case is an “ ‘ “outbound” forum selection clause’ ” or an “ ‘ “inbound” [forum selection] clause.’ ” 129 So.3d at 1011. These appear to be terms that have application to clauses governing the choice of venue in eases where a choice must be made between different states, not between fora within a single state. See generally, e.g., Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 349 (Ala.1997) (upholding enforceability of an “outbound” forum-selection clause providing for disputes between the parties to be “conducted in Duval County, Florida”); Ex parte D.M. White Constr. Co., 806 So.2d 370, 371 (Ala.2001) (upholding enforceability of a “ ‘outbound’ forum-selection clause” providing for disputes between the parties to be instituted “in the courts of Hamilton County, Tennessee”); and High Life Sales Co. v. Brown-Forman Corp., 823 S.W.2d 493 (Mo.1992) (affirming trial court’s denial of motion to dismiss an action in order to allow it to be refiled in Kentucky, the forum designated in the agreement). The question of the enforceability of such clauses in such cases triggers different policy concerns than are presented in the present case (involving a simple forum-selection clause that will be applied to govern the choice between counties in Alabama, each of which, presumably, is an otherwise appropriate venue for the action, see Sutherland, 700 So.2d at 351 (interpreting Ala. Code 1975, § 6-3-1, to permit parties to “agree[ ] to restrict action to a particular forum that is authorized under the venue statutes”)).
In any event, I do not find it necessary in this particular case to address the standard by which a court must decide whether to enforce a forum-selection clause of the nature presented here. Instead, it appears to me that the only question presented in this case is the one presented by the position taken by Fish Market Restaurants, Inc., and George Sarris (hereinafter referred to collectively as “Fish Market”) that the forum-selection clause in the January 18, 2007, contract was not a function of “a clear meeting of the minds between the parties.”
As to this meeting-of-the-minds argument, the main opinion points out that Fish Market relies upon a case concerned only with an “accord and satisfaction,” namely Ray v. Alabama Central Credit Union, 472 So.2d 1012 (Ala.1985). The main opinion correctly notes that the present case does not involve an accord and satisfaction, but I do not read Fish Market’s argument as contending otherwise. An accord and satisfaction is in fact a type of contract, and it appears to me that Fish Market just happens to have quoted from an accord-and-satisfaction case in an effort to document the elements of a contractual agreement. The main opinion goes on to cite Ex parte Grant, 711 So.2d 464 (Ala.1997), for the proposition that one of “ ‘ “[t]he requisite elements of [a contract]” ’ ” is “ ‘ “mutual assent to terms essential to the formation of a contract,” ’ ” 129 So.3d at 1013, an element I see as no different from the “assent or meeting of the minds of the parties” element quoted by Fish Market from Ray v. Alabama Central Credit Union, 472 So.2d at 1014. In other words, at least insofar as the issue presented in this case is concerned, I cannot agree with the main opinion that “[t]he elements germane to the formation *1017 of a contract ... are different than the elements germane to an accord and satisfaction.” 129 So.3d at 1013. Again, an accord and satisfaction is but a form of a contract.[3]
Because the main opinion concludes that “[t]he elements germane to the formation of a contract ... are different than the elements germane to an accord and satisfaction,” 129 So.3d at 1013, it finds Fish Market’s argument utilizing accord-and-satisfaction precedent “not persuasive.” 129 So.3d at 1013. I find Fish Market’s position in this case not persuasive for a different reason, namely, that Fish Market has failed to demonstrate that it did not objectively manifest its agreement to the provision in question. As the main opinion aptly points out, “ ‘[a]ssent must be manifested by something. Ordinarily, it is manifested by a signature,’ ” at least in regard to a written contract. 129 So.3d at 1013 (quoting Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105, 108 (Ala.2000))(emphasis omitted). As the main opinion subsequently explains, “[t]he only evidence Fish Market directs this Court’s attention to indicating that Riverfront and Fish Market did not mutually assent to the terms essential to the formation of the lease” dated January 18, 2007, 129 So.3d at 1013, is the testimony of Sarris in which he focuses primarily on the fact that he never received an original copy of the lease. In this respect, I fully agree with the statement in the main opinion that “Fish Market has not directed this Court’s attention to any authority indicating that the ... testimony of an undisputed signatory to a contract stating simply that he never received an original copy of the contract demonstrates that the parties had not mutually assented to the terms of the contract.” 129 So.3d at 1013.
I believe the foregoing is sufficient analysis upon which to decide this case, and I express no agreement or disagreement with any portion of the analysis that follows the latter statement in the main opinion.

. On a related note, I do not agree with the references in the main opinion suggesting that a "lease” is not actually a contract but merely "is treated as a contract under our precedent.” 129 So.3d at 1012 (emphasis added). In point of fact, although it is true that a lease does create an interest in land, a lease is a contract, as noted by the case also cited in the main opinion, Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc., 873 So.2d 1091, 1098 (Ala.2003) (noting that *1018 "lease agreements are contracts ” (emphasis added)).